WILLETT HEMINGWAY, ADMINISTRATOR, AND ANOTHER
*vs.* MICHAEL COLEMAN.

A court of equity does not undertake to compel obedience to the highest
requirements of honesty and morality in the transactions of men.

Where parties do not stand in a confidential relation a court of equity will
not, in the absence of actual fraud, set aside a sale for inadequacy of
price.

The respondent had formerly for many years been in the service of *A* as
a laborer, being chiefly employed in taking care of oyster beds kept by
him, and being much trusted by him. Seven years after he had left the
service, and while very friendly relations continued between him and *A*
and his family, *A* had become broken down in mind and unable to
manage his affairs, and his wife, an intelligent and capable woman, was
in charge of them. She, thinking it best to sell the oyster grounds,
applied to the respondent, who advised the sale and sold a part for her.
She afterwards said to him that she wished to sell the rest, and he
offered to buy them. She said he might have them if he would pay as
much as any one else. The next day she called upon him and asked
what he would give for them. He replied $200. After a moment's
hesitation she said she would take it. He paid the money and she at
once had a conveyance to him executed by her husband. When he
made the offer he knew that the grounds were worth $500, and could be
readily sold for that sum. She believed him honest, and a friend, and
that he would offer what he thought a fair price; and he knew that she
would consider any price that he should offer as in his opinion a fair
one. Held that the sale ought not to be set aside by a court of equity,
either on the ground of fraud in a confidential relation or on that of
inadequacy of price.

BILL IN EQUITY to set aside a sale of certain oyster
grounds; brought to the Court of Common Pleas of New
Haven County, and tried before *Stoddard, J.* Facts found,
and decree for petitioners, and motion in error by respon-
dent. The case is sufficiently stated in the opinion.

*J. W. Alling* and *L. N. Blydenburgh,* for the plaintiff in
error.

*S. L. Bronson* and *C. Ives,* for the defendants in error.

PARDEE, J. This is a bill in equity by the widow of

Jacob P. Augur and by the administrator upon his estate, charging the respondent with having by fraud and by false and deceitful representations obtained from the deceased deeds of certain oyster grounds, and asking the court to compel the re-conveyance of the same.

From 1854 to 1872 the respondent was in the service of Mr. Augur as a laborer, and was chiefly employed in laying oysters in and taking them from their beds; at times, in the absence of his employer, directing the shipment of them from Fair Haven. He was a trusty and trusted servant. In the later years he commenced and has since continued business on his own account, the friendly relation between himself and Mr. Augur continuing during the life of the latter.

In 1879, Mrs. Augur, who is found to be an intelligent and capable woman, practically managed the business of her husband, he being to a large degree mentally incapacitated. She deeming it advisable to sell certain oyster grounds belonging to him, so stated to the respondent; he told her that the boundaries of the lots would be annually carried away or hidden by the action of water and ice, and that adjoining proprietors in re-establishing their own boundaries would encroach a little upon those of Mr. Augur unless he kept a sharp look out; and that changes in legislation concerning oysters were talked of. Subsequently, by request of and authority from Mrs. Augur, he negotiated the sale of one lot. She then stated to him that she desired to sell the remaining lots, and he offered to become a purchaser. She said to him that he could have them if he would pay as much as any one else would. On the next day she went to his house and asked him what he would give for them; he replied two hundred dollars; after a moment's hesitation she said she would accept the offer. He paid her the money, and on the next day she caused Mr. Augur to execute deeds therefor and delivered them to the respondent. When he made the offer he knew that the lots were worth at least five hundred dollars and could be readily sold for that sum. Mrs. Augur believed him to be

honest and a friend to herself and husband, and therefore that he would offer what he thought to be a fair and reasonable price; otherwise she would have asked some other person as to the value. He knew that she would consider any price which he should offer as being in his opinion fair and reasonable.

For obvious reasons even a court of equity does not undertake to compel obedience to the highest requirements of honor or morality. It contents itself with holding men to a lower, or legal and technical, morality in the exercise of agencies and powers, and in the performance of duties springing from confidential relations imposed by operation of law or voluntarily assumed, such as exist between parent and child, attorney and client, guardian and ward, trustee and *cestui que trust*, principal and surety, partner and partner, landlord and tenant, and others of kindred character. In these it requires the recipient of confidence and of the power of personal control to refrain from abusing them for his own benefit, either by falsehood or suppression of truth; it imposes upon him an obligation to communicate unasked all knowledge in his possession pertinent to the matter in hand.

We have before us a contract of sale, the parties to which are of full mental capacity; the vendor believes the vendee to be her friend, and that the friendship, dating from the time when he served her husband as a laborer, has continued unbroken during the seven years which had elapsed since that service terminated; and she believes him to be honest because of his fidelity. Although friends in fact, in law and equity they were strangers and stood at arms length in the matter of contract; for friendship is unknown to law or equity; in it neither finds any relation involving special confidence. He had not by being a friend become the guardian of her interests in any such sense as to impose upon him a legal duty to sacrifice his own to theirs. She desired to sell a parcel of land and asked him what he would give for it; he replied two hundred dollars; after a moment's hesitation she accepted the offer, and this without

requiring from him any expression of opinion as to its value, without hearing a word from him in the way of inducement to sell, and without inquiring of any other person, believing that his friendly feelings would induce him to offer the full value. In this she subjected his friendship to a strain which it could not bear, to a strain which the law does not require it to bear. This was her mistake, not his fraud.

Information lay all about her, to be had by asking. She refrained from asking, not because of any word or act of his, but of her own choice; and not being asked to speak, he is not to be held responsible in a court of law for his silence; for that he is to be remitted to the forum of conscience.

When the minds of persons capable of binding themselves meet in a contract of sale, neither standing in any relation to the other imposing a trust or begetting confidence, with equal knowledge or means of knowledge as to the subject matter of the contract, in the absence of actual fraud a court of equity will not intervene because of inadequacy of price.

Such persons may sell their property for less than its value, or give it away. And the law must either regard such contracts as having been thus made knowingly and purposely, and therefore not to be escaped from as thus intentionally made, or assume the right to modify every contract; which would be intolerable.

There is error in the judgment complained of.

In this opinion the other judges concurred.