ROBERT R. DOWNEY *v.* JACQUELINE DOWNEY ET AL.
(2379)

TESTO, HULL and BORDEN, Js.

Argued January 4—decision released April 3, 1984

*Stephen Pierson,* for the appellant (named defendant).

*John L. Senning,* with whom was *Marianne B. Kilby,* for the appellee (plaintiff).

HULL, J. The named defendant appeals from the trial court's judgment determining that a group insurance policy contained a facility of payment clause which created a duty in the defendant beneficiary to pay a portion of the death benefits received by her to the plaintiff. The court held that the failure of that defendant to make such payments to the plaintiff gave rise to the imposition of a constructive trust in favor of the plaintiff. The named defendant claims on appeal[1] that there was no such facility of payment clause in the policy and that the requirements for imposing a constructive trust had not been met.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

The undisputed facts are as follows. The plaintiff, Robert R. Downey, was born on March 4, 1955, and was the son of James R. and Elizabeth J. Downey. On or about November 25, 1974, the plaintiff's parents were divorced. Thereafter, the plaintiff's father married the defendant Jacqueline Downey. Seven months later, on June 18, 1975, while employed by the defendant Peat Marwick Mitchell & Company (Peat Marwick), James R. Downey died. As a result of his employment at Peat Marwick, the deceased participated in a company group insurance plan purchased from the defendant Prudential Insurance Company of America (Prudential).

The insurance policy in question contained a provision which stated: "The benefit due as of any date established above is payable to the Employee's widow or widower, if any, then a Qualified Family Member, otherwise in equal shares to the employee's then Qualified Family Member children."[2]

At the time of James Downey's death, both his wife Jacqueline and his son Robert were qualified family members. Pursuant to the "Death Benefit While A Covered Individual" provision quoted above, Jacqueline Downey received death benefit payments totaling $3000 per month from June 18, 1975, until March 4, 1978, the date of Robert's twenty-third birthday after which he no longer was a qualified family member. The $3000 included $2000 payable because Jacqueline was a qualified family member spouse and an additional $1000 by virtue of Robert's status as a qualified family member.[3]

---

[2] The policy definition of a qualified family member includes (1) a spouse who is not legally separated from the insured at the time of death, is under age sixty-five and has not remarried; and (2) an unmarried child under twenty-three years of age.

[3] Jacqueline Downey had received all payments except $2000 which was held in escrow by the defendant Prudential.

The plaintiff did not reside with his stepmother, the defendant Jacqueline Downey, and had not lived in the same residence with her at any time after her marriage to James Downey. Jacqueline Downey at no time paid to the plaintiff or expended on his behalf any of the proceeds paid to her under the policy. As a result, the plaintiff brought suit seeking, in part, to compel her to pay over to him one-third of what she had received under the policy, which represented the additional $1000 included in each death benefit payment by virtue of the plaintiff's being a qualified family member.

The trial court found that the additional $1000 was intended to be for the support for the plaintiff. The court also found that Jacqueline Downey was merely the payee under a "facility of payment" clause,[4] and, as a payee, she had a duty to pay from the receipts the rightful shares to all beneficiaries; in this case her stepson and herself. Because she had not done this, the court concluded that she held the money claimed to be due to the plaintiff in constructive trust.

The defendants have appealed the court's decision claiming that there is no facility of payment provision in the insurance policy and that the criteria for establishing a constructive trust were not and cannot be established in this case.

I

The insurance policy provides: "The benefit due as of any date established above is payable to the Employee's widow or widower, if any, then a Qualified Family Member, otherwise in equal shares to the Employee's

---

[4] A "facility of payment" clause in an insurance policy is defined as " 'an appointment both by the assured and the beneficiary of persons, any of whom are authorized to receive payment of the sum agreed to be paid. . . . The clause [is] for the convenience of the company to enable it to make prompt payment with a certainty that the validity of the payment could not be thereafter questioned.' " *Lutostanski* v. *Lutostanski,* 120 Conn. 471, 475, 181 A. 533 (1935).

then Qualified Family Member children." The trial court found that the policy did not clearly set out a beneficiary. We disagree. The policy provision in question states that the "benefit due . . . is payable to the Employee's widow . . . otherwise . . . to the . . . children."

In construing an insurance policy, the question is what coverage was intended as disclosed by the provisions of the policy. *Downs* v. *National Casualty Co.*, 146 Conn. 490, 494, 152 A.2d 316 (1959). General rules governing the interpretation of any written contract are applicable to the interpretation of insurance contracts. Id. "A contract is to be construed according to what is fairly to be assumed to be the understanding and intent of the parties." *Bridge-Mile Shoe Corporation* v. *Liggett Drug Co.*, 142 Conn. 313, 318, 113 A.2d 863 (1955). If the terms are unambiguous the court will not torture or strain their meaning to give them an unwarranted construction. *Downs* v. *National Casualty Co.*, supra. When an ambiguity arises, a policy is to be taken as a whole with all its relevant provisions considered in connection with each other. Id., 495. "Every provision is to be given effect, if possible, and no word or clause eliminated as meaningless, or disregarded as inoperative, if any reasonable meaning consistent with the other parts of the policy can be given to it." Id. We do not find the policy to be ambiguous regarding the designation of beneficiaries in this case.

## II

Jacqueline Downey was the designated beneficiary pursuant to her status as a qualified family member spouse. She was not a mere payee under a facility of payment clause as there was no such clause included in the policy.

In concluding that a facility of payment clause existed in the policy in question, the court relied upon

*Lutostanski* v. *Lutostanski,* 120 Conn. 471, 475, 181
A. 533 (1935), which recognizes the validity of facility
of payment provisions. *Lutostanski* v. *Lutostanski,*
supra, 474–76, and the cases cited therein, however,
all assume, in discussing the enforcement of a facility
of payment provision, the express existence of such a
clause within the policy.

In this case, the policy states in the provision entitled
"Beneficiary Provisions": "Any insurance under the
Group Policy becoming payable on account of the death
of an employee will be payable to the person designated
by him as his beneficiary on a form satisfactory to
Prudential, subject to the facility of payment provision
*if included* under the Coverage Schedule and subject
to the Assignment Limitation Section of the General
Provisions." (Emphasis added.) Our careful examina-
tion of the coverage schedule reveals no such facility
of payment provision or any reference to one. The lan-
guage of the policy is clear that payment is to be made
to the designated beneficiary and that there is no facil-
ity of payment clause *unless* one is included in the cover-
age schedule. Furthermore, we do not read *Lutostanski*
v. *Lutostanski,* supra, as standing for the proposition
that such a clause may be inferred merely because there
is ambiguous language concerning the intended bene-
ficiary if, in fact, any such ambiguity existed here. The
court, therefore, erred in finding a facility of payment
provision within this insurance policy.

## III

The court concluded that a percentage of the benefits
were held in constructive trust for the plaintiff because
it found that there was a special relationship between
Jacqueline Downey, as stepmother, and Robert, her
stepson, which imposed a duty upon her to use part of
the funds for his benefit.

"Where there is no proof of an actual confidential relationship and the law looks only to a presumption of fraud arising out of the relationship of the parties to each other, that relationship must be one where there is ordinarily a special trust and confidence and the likelihood of the exercise of personal influence and control such that one would expect of the other fair dealing and mutual consideration." *Worobey* v. *Sibieth,* 136 Conn. 352, 359, 71 A.2d 80 (1949). It is clear that to invoke a constructive trust there must be a duty owed, or a fiduciary or other special relationship between the parties.

The court found a special relationship in this case. There is insufficient evidence on the record, however, to show that, in the relationship between Jacqueline and Robert Downey, there was "ordinarily a special trust and confidence and the likelihood of the exercise of personal influence and control such that one would expect of the other fair dealing and mutual consideration." Id.; see *Zack* v. *Guzauskas,* 171 Conn. 78, 104, 368 A.2d 193 (1976) (insufficient evidence to establish special confidential relationship between parents-in-law and daughter-in-law). The trial court, therefore, erred in imposing a constructive trust on a share of the proceeds.

There is error; the judgment for the plaintiff is set aside and the case is remanded with the direction to render judgment for the defendants and to release the funds held in escrow to the defendant Jacqueline Downey.

In this opinion the other judges concurred.