DONALD L. FILOSI *v.* DONALD HAWKINS ET AL.
(2331)

DANNEHY, C.P.J., TESTO and BORDEN, Js.

Argued January 17—decision released May 8, 1984

*William J. Willetts, Jr.,* with whom, on the brief, was *Elissa W. Hemond,* for the appellant (plaintiff).

*Thomas J. Londregan,* with whom, on the brief, was *Leo J. McNamera,* for the appellees (defendants).

TESTO, J. In this summary process action, the plaintiff claimed possession of certain property owned by him in East Lyme and occupied by the defendants who were the plaintiff's daughter, Dorinda Hawkins, and her husband, Donald Hawkins. The defendants filed a counterclaim[1] alleging that the plaintiff holds title to the property as a constructive trustee for them and that he has been unjustly enriched as a result of the defendants' efforts. From a judgment for the defendants on the complaint and on the counterclaim, the plaintiff appealed.[2]

The trial court found the following facts: The defendants were married in 1958 when they were both minors. The plaintiff told them that he would give them a build-

---

[1] We note that the scope of allowable issues in a summary process action has been broadened to include complex equitable issues to be filed as special defenses. *Harvey* v. *Pilewski,* 37 Conn. Sup. 889, 890, 441 A.2d 869 (1982); *Steinegger* v. *Fields,* 37 Conn. Sup. 534, 537, 425 A.2d 597 (1980). Such issues had previously been unavailable in summary process actions. *Atlantic Refining Co.* v. *O'Keefe,* 131 Conn. 528, 531, 41 A.2d 109 (1945). Since the defendants' claims could have been asserted as special defenses, judicial economy dictates that they may also be asserted as the basis of a counterclaim. See *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 473 A.2d 318 (1984).

[2] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

ing lot as a wedding present and that when they had $1000 in cash, he would help them build a house on the lot.

When the defendants had $1200 in their savings account, the plaintiff told them that he had a bill of $800 at the lumber company. He further stated that if the defendants paid that bill to reestablish his credit with the company, the plaintiff would then obtain new credit with the lumber company and help the defendants build a house. The defendants paid the $800 and the plaintiff began construction of the house in accordance with a plan selected by Dorinda Hawkins.

After the house was partially constructed on a lot selected by the defendants, the plaintiff advised them to obtain a $12,000 mortgage. He further advised the defendants that the mortgage would have to be in his name because his daughter, Dorinda Hawkins, was still a minor. The plaintiff told the defendants that this was the only way the house would be constructed and that, when both defendants were of age, he would convey the property to them. The plaintiff signed a mortgage deed and note in the amount of $12,000 and thus held title to the property. During the construction of the house, the plaintiff was the general contractor and worked with the defendant Donald Hawkins and two other men. The mortgage proceeds were used to pay for the construction costs of the house which was completed in 1960. It was the defendants' belief that the plaintiff would convey title to the property to them when they were both no longer minors. The defendants were young and inexperienced, had a good relationship with the plaintiff, trusted him and relied upon him for advice and guidance as to financial matters and real estate. The defendants, in reliance upon the plaintiff's statement that he would convey the property to them, did not request the plaintiff to give them a deed to the property. After Dorinda Hawkins reached the

age of majority, the plaintiff informed the defendants that he would not turn the property over to them until the mortgage was paid in full to avoid the necessity of their securing a new mortgage at a higher rate of interest. At this time, the defendants believed that title to the property would be conveyed to them when the mortgage was completely paid.

From 1960 until May 1975, the defendants made payments, equal to monthly payments due on the original mortgage to the plaintiff's wife, who kept his books and who, in return, made the mortgage payments from the plaintiff's checking account. The defendants retained possession of the mortgage payment receipt books. After the death of the plaintiff's wife in 1975, the plaintiff told the defendants that he had completely paid the balance of the mortgage; thereafter, the defendants ceased making any mortgage payments. Real estate taxes on the property were paid by the defendants from 1960 to 1976. The property was insured by a homeowner's policy issued in the name of the defendants from 1960 to 1977, and all the premiums, except one, were paid by them. Deductions for real estate taxes on the property and interest on the mortgage were taken by the defendants on their income tax returns in the years 1960 through 1976. They also made significant improvements to the property.

After the death of the plaintiff's wife, the relationship between the defendants and the plaintiff deteriorated. Without the knowledge or consent of the defendants, the plaintiff remortgaged the property to secure a new $25,000 loan which, after paying off the $2,733.49 balance of the original mortgage, he used for his own purposes. Disputes between the defendants and the plaintiff led to the defendants moving from the house with their children for a period of seven months in 1977 through a part of 1978. They resided at a friend's home while Dorinda Hawkins recovered from a nervous

breakdown attributable to the disputes. The defendants left most of their personal belongings in the house and returned in May, 1978, with their children. They were residing at the house at the time of the trial.

On May 5, 1975, the plaintiff executed a deed of the property to the defendants, but he did not deliver the deed to them. He always referred to the house as being his "daughter's house." Since 1976, the plaintiff paid the property taxes in the amount of $4538.23 plus the premiums of fire and liability insurance for $934. The trial court rendered judgment for the defendants on the plaintiff's complaint and on their counterclaim ordering the real estate to be conveyed to the defendants free and clear of all encumbrances upon payment to the plaintiff in the sum of $8205.72.

On appeal, the plaintiff claims that the trial court erred (1) in imposing a constructive trust on the subject premises and ordering the plaintiff to convey title to the defendants; (2) in excluding testimony and evidence offered on the issues of unclean hands and abuse of confidential relationship; and (3) in some of its findings which he claims were clearly erroneous.[3]

I

The first issue raised by the plaintiff concerns the constructive trust on the property. He argues that the trial court's conclusion that he would be unjustly enriched were he permitted to retain ownership of the property is clearly erroneous.

" 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' . . . The imposition of a constructive trust

---

[3] At oral argument, the plaintiff abandoned a claim of laches.

by equity is a remedial device designed to prevent unjust enrichment. . . . Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." (Citations omitted.) *Cohen* v. *Cohen,* 182 Conn. 193, 203, 438 A.2d 55 (1980). Before a constructive trust can be created, however, there must be a duty owed, or a fiduciary or otherwise special relationship between the parties. *Downey* v. *Downey,* 1 Conn. App. 489, 495, 472 A.2d 1296 (1984); *CBS Surgical Group, Inc.* v. *Holt,* 37 Conn. Sup. 555, 559, 426 A.2d 819 (1981). All of these considerations are factual in nature to be determined by the trier whose findings will not be disturbed by this court unless the conclusion could not reasonably have been drawn. *Larson* v. *Norkunas,* 37 Conn. Sup. 869, 872, 441 A.2d 205 (1982).

In the present case, the trial court found that there existed a special relationship between the plaintiff and his daughter as parent and child. While a parent and child relationship is not in and of itself a fiduciary one, it does generate a "natural inclination to repose great confidence and trust." *Cohen* v. *Cohen,* supra, quoting *Hieble* v. *Hieble,* 164 Conn. 56, 61, 316 A.2d 777 (1972). To impose a constructive trust, there must also be a finding that the plaintiff was unjustly enriched. See *CBS Surgical Group, Inc.* v. *Holt,* supra, 558–59. Two elements must be demonstrated: that the plaintiff was benefited and that the benefit was unjust. *Providence Electric Co.* v. *Sutton Place, Inc.,* 161 Conn. 242, 246, 287 A.2d 379 (1971). For a period of over fifteen years, from 1960 to 1975, most of the expenses of construction, maintenance and improvements of the house were borne by the defendants. Under these circumstances, to permit the plaintiff to retain title to the property would result in his unjust enrichment. We conclude that

there are no grounds for disturbing the trial court's decision to impose a constructive trust.[4]

## II

The second claim pursued by the plaintiff is that the trial court erred in excluding certain evidence on the ground that it was irrelevant. Specifically, the plaintiff argues that the documentary evidence and testimony regarding stolen checks and regarding other misappropriation by the defendants of the plaintiff's rent money unrelated to this property were relevant to the issue of unclean hands and abuse of a confidential relationship.

A ruling on relevancy falls within the trial court's broad discretionary powers and is subject to review by this court only to ensure that its discretion has not been abused. *Hardisty* v. *Hardisty,* 183 Conn. 253, 257, 439 A.2d 307 (1981); *State* v. *Hogan,* 180 Conn. 182, 183, 429 A.2d 462 (1980). This court, generally, will not review any rulings on evidence where no exception was taken by counsel. Practice Book § 288; *State* v. *Baker,* 182 Conn. 52, 56, 437 A.2d 843 (1980). Only the most exceptional circumstances will save a claim from the fatal consequences of counsel's failure to make a timely exception. *State* v. *Baker,* supra.

The plaintiff's failure to take an exception to the first of these two rulings by the trial court does not fall within the exceptional circumstances to save the claim. Thus, we will not review it. As to the second ruling, we conclude that the court did not abuse its discretion in excluding the testimony.

[4] In his brief, the plaintiff also argues that this case is within the statute of frauds in that it involves an oral gift of land and an oral agreement to convey property. See General Statutes § 52-550. The plaintiff's statute of frauds claim is being raised for the first time on appeal and was neither raised in the complaint nor were sufficient facts alleged in the pleadings to state a cause of action on it. See *Cahill* v. *Board of Education,* 187 Conn. 94, 100, 444 A.2d 907 (1982). We will, therefore, not review it.

## III

The plaintiff's final claim relates to certain findings made by the trial court. He contends that the trial court erred in finding that the plaintiff made certain statements concerning the conveyance of the property and in finding that until May, 1975, the defendants made the monthly mortgage payments to the plaintiff's wife.

This claim involves the credibility of the witnesses. It is settled law that the credibility of witnesses and the weight to be accorded to their testimony is entirely a matter for the discretion of the trier of fact. *Piantedosi* v. *Floridia,* 186 Conn. 275, 277, 440 A.2d 977 (1982); *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.,* 184 Conn. 10, 18–19, 441 A.2d 43 (1981); *Healy* v. *White,* 173 Conn. 438, 444, 378 A.2d 540 (1977); *Shipman* v. *Carr,* 38 Conn. Sup. 393, 395, 449 A.2d 187 (1982). The trial court alone can observe the witnesses and draw inferences from their demeanor. *Piantedosi* v. *Floridia,* supra. We will not reverse the decision of the trial court unless it is clearly erroneous. Practice Book § 3060D; *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981).

In this case, the trial court chose to believe the defendants' testimony as the more credible. The trier is free to accept or reject, in whole or in part, the testimony offered by either party. *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981); *New York Annual Conference* v. *Fisher,* 182 Conn. 272, 302, 438 A.2d 62 (1980).

There is no error.

In this opinion the other judges concurred.