[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This vigorously contested equitable matter came to this court July 16, 1992 in connection with the plaintiffs' request for various prejudgment relief on the basis of their complaint, claiming that by virtue of a constructive trust their sister, the defendant, held certain assets for their benefit. After various interlocutory motions the complaint was amended on March 26, 1993. By this complaint the plaintiffs' Daniel Taylor, Carlene Clark, Lester Taylor, Jr., Linda Molonson and Laurie A. Taylor all claim to be children of the union of Lester Taylor, Sr. and Dorothy Louise Boyle. The plaintiffs in their three-count complaint alleged that their sister, Sherri Taylor, also a child of that union, held certain real estate on Leffingwell Road in the Town of Montville, Connecticut (first count); a certificate of deposit in the amount of approximately $88,000 at the Norwich Savings Society (second count) and certain "other funds" (third count) in trust for all of the six children of said union by virtue of having received the said assets under circumstances alleged from their father Lester Taylor, Sr. prior to his death.
The defendant, Sherri Taylor, filed her answer and special defense on June 1, 1993. The defendant admitted the familial relationships and that on or about December 23, 1977 by deed she received a real property transfer from her father. The remaining allegations have been denied by the defendant. In addition the defendant has alleged a special defense as to any trust or contractual obligation that the same are barred as in violation of the Statute of Frauds. The plaintiffs have denied the special defense. CT Page 1116
A trial was conducted in this court on February 8, 9 and 10, 1994 at which all parties were represented by experienced trial counsel.
All parties presented witnesses who reviewed their recollections of the family relationships over the years. A very unusual family arrangement was demonstrated by the evidence. Lester Taylor, Sr. whose property and assets are in dispute in this action was previously married and had a family at another location prior to his arriving in Connecticut. Apparently the previous marriage was never terminated legally. Nevertheless, Mr. Taylor purportedly married the mother of the children involved in this litigation, Dorothy Louise Boyle. As a result of that union, the six children involved in this case were born. Dorothy Louise Boyle-Taylor died at a relatively young age and Lester Taylor, Sr. married two other women in turn thereafter.
Many of the plaintiffs testified that the father and his six children were an ideal family where all parties were loved equally. Nevertheless, it became clear from the evidence that there were distinctions. Daniel testified that their father was closest to him and the defendant. Linda testified that she wished her relationship with her father had been better. All of the plaintiffs have been married at one time or another. Daniel had been married more than once. Most had children. The defendant, on the other hand, had never married and was the youngest child of the union. The plaintiffs, understandably, had left the home and had taken up marital residences elsewhere, some of them out of state. Daniel presently lives in Fall River, Massachusetts, having previously recently resided in East Providence, Rhode Island. Laurie is living in Memphis, Tennessee. The defendant, on the other hand, was a single woman who stayed on the property which was the family home in Montville, Connecticut, where she resided with various individuals in a mobile home adjoining the house in which her father lived.
The documentary evidence reflects that Lester Taylor, Sr. deeded a one half interest in the house and land in Montville to Sherry L. Taylor his daughter by deed dated December 20, 1977 and recorded in the Montville land records on December 23, 1977. (Plaintiffs' Exhibit 1). CT Page 1117
Lester Taylor, Sr. deeded by quit claim deed the balance of his interest in said property to his daughter Sherry L. Taylor by deed dated January 4, 1985, recorded on the Montville land records on January 4, 1985. This deed specifically provided that "the grantor herein reserves to himself use of the premises for the term of his natural life." Lester Taylor, Sr. assisted the defendant Sherri L. Taylor, by providing approximately $34,000 towards the purchase of a new Greenleaf mobile home, the title to which was placed in the defendant's name on or about November 18, 1989. (Plaintiffs' Exhibit 4.) A certificate of deposit was transferred into Sherri Lee Taylor's name by Lester Taylor, Sr. in 1989 having a balance of approximately $88,000. (Plaintiffs' Exhibit 10.)
Sherri Lee Taylor, the defendant, was also the beneficiary of the group life insurance death benefits of Lester H. Taylor Sr. by which on December 17, 1991 she received a check in the amount of $1,003.77. No evidence was introduced to show when the beneficiary designation had been made.
The parties have also introduced in evidence various photographs (Plaintiffs' Exhibit 13, 14) and various greeting cards and correspondence (Defendant's Exhibit 2, 3) which demonstrate to the court that Lester Taylor, Sr. was in contact with various of his children to some degree or another during his lifetime.
Notwithstanding the volumes of documentation introduced into evidence, there is no claim by any plaintiff that there is any written documentation of any intention by Lester Taylor, Sr. to impose a trust with regard to any of the transactions in question in this case. All of the evidence claimed by the plaintiffs to circumstantially show an intent comes by way of oral testimony at the trial. The plaintiffs do not claim that the said Lester Taylor, Sr. was in any way sick or disabled during any period of time in question. On the contrary, the plaintiffs' witnesses have indicated that at all times relevant to this case their father was in good health, a strong and vigorous man who was able to say what was on his mind and knew what he was doing with regard to his property. One of the plaintiffs also testified that he knew the extent of his property.
The defendant has denied that any trust was imposed upon CT Page 1118 her or that her father in any way orally or otherwise requested her to make any special arrangements with regard to the property. The plaintiffs themselves in their specific testimony do not appear to be claiming that they were specifically told by their father either that there was a trust or that Sherri Taylor was holding property in trust. Rather, they appear to have been relying on some general indications which they interpreted from their fathers statements that he would take care of all his children or generally that the right thing would be done when the time came. Also, they seemed to claim that he was in effect putting his assets in the defendants name in 1977, 1985 and 1989 to "hide" them from his former family and/or his subsequent wives. Laurie Taylor did testify that her father had told her in a general way that "everything" would be divided equally. Linda Molonson testified that she wished that she had had a better relationship with her father than she actually had, suggesting (but not elaborating upon) difficulties in their relationship. She testified that her father did not trust or like lawyers. Nevertheless there are witnesses on each deed to real estate who were lawyers. Lester H. Taylor, Jr. testified that his father never told him why he placed the property in Sherri's name. Daniel E. Taylor testified that his father told him that everything was "taken care of" but never explained. He also indicated on cross examination that he had never had a discussion with his father relative to the disposition of his property. Daniel testified, in contrast to the claims of equality by some of the other plaintiffs, that he and Sherri were the closest to their father. Mildred Taylor, one of the former wives of the decedent Lester Taylor, Sr., testified that she recalled that decedent indicating that the property was put in Sherri's name so that she, Mildred, wouldn't get any of it. Carlene Clark testified that there were no discussions with her father about the property which had come to him from her mothers father and mother. She testified that her father had asked if he could put a large sum of money in her name, but that her husband objected. She had understood that her father had wanted to put his money in her name but not make her a gift. She learned later about the undisclosed wife that her father had before marrying her mother and suspected that he wanted to hide the money because there was a legal wife elsewhere. She denied ever discussing the property situation with the defendant Sherri Taylor. CT Page 1119
The defendant's witness, Debra Picardi, testified that she had resided on Leffingwell Road as a roommate of the defendant. She knew the family and was friendly with them. She testified as to a telephone conversation she have overheard in which Daniel Taylor, one of the plaintiffs, in speaking with Sherri Taylor (apparently on another extension phone) indicated that the family understood that the mobile home and the real estate were "hers" and that their only claim was going to have to do with the amount of money in the certificate of deposit. Tracy Heddle testified that she was also at one time a roommate of Sherri Taylor and that she was present at a time when Lester Taylor, Sr. had told Sherri Taylor that he wanted to buy her a new mobile home because the one that she had previously was in disrepair. No trust was discussed in her presence. She also testified that while living as a roommate with Sherri Taylor, she paid Sherri Taylor rent for her share of the use of the mobile home and that she was not aware of any rent that Sherri had ever paid to her father in connection with her use of the property. Sherri Taylor herself testified that when she received the property on the various occasions as indicated above, her father told her that he wanted to do for her what his mother had done for him and that he wanted her to have everything to insure her future. Sherri Taylor acknowledged that she and her father were very close. She took her father to the bank while he did his banking. She took him on vacations. She lived next door to him. She maintained the deeded property while she also worked as a grounds keeper for $7 an hour at the Norwich Inn in Norwich, Connecticut. At the time of the trial the defendant was employed at Foxwood Casino in the Coin Department where she had begun employment on March 10, 1993.
Lester Taylor, Sr. died sometime in November, 1991. The defendant testified that she spent money on the repairs to the house where her father retained a life use, she mowed the grass, painted the house and raked the yard. She testified that she cut her father's toenails and was involved in repairs to the furnace and repairs to the clapboard siding on the house.
The testimony suggests to the court that the plaintiffs knew of the transfer of the real estate and the mobile home at or about the time their father transferred them to Sherri Taylor, but were unaware of the CD until after his death. CT Page 1120
The defendant also acknowledged that she felt that because the CD had been given to her for the protection of her future that she felt responsible to her father for using it and would discuss with him any withdrawals she made. She also felt that he had a right to take money from it if he wanted to since it originated with him. The evidence shows that at one time, after the transfer into her name, Lester Taylor, Sr. withdrew $10,000 from the CD without providing an explanation of its need or use to Sherri Taylor. Sherri Taylor herself also made substantial withdrawals from the account during her father's life. The account records, however, were not introduced in evidence. At the time the decedent Lester Taylor, Sr. transferred the CD to Sherri Taylor, he had other CD's and accounts at the bank. No details were provided to the court.
The estate of Lester Taylor, Sr. is open and pending in the Montville Probate Court at the time of the trial but was not made a party in this case. No documentation from the probate court has been introduced as exhibits in this case, but the evidence suggests that there are assets in the estate which will be shared among the heirs of the estate, presumably including the previously unknown family. The evidence suggests that $19,000 was found in the house where Lester Taylor, Sr. was living at the time of his death and that there were other assets which had been auctioned by the time of the trial.
There was testimony that many years ago a savings account was created by the decedent in the names of Sherri Taylor "or" Laurie Taylor with a balance of $19,117.19 (Plaintiffs' Exhibit 12) but except for the existence of the account at that time no explanation has been provided as to the same at the trial. Linda Molonson testified that in 1968, shortly after her mother died, her father talked about putting his assets in her name. Linda testified that she signed some papers which she didn't read and could not be specific about but had no further information. She claimed that her father told her that he would be changing the assets over the years.
Both parties have filed memoranda of law and have presented oral arguments to the court with regard to their specific claims.
There is no real dispute as to the law with regard to the CT Page 1121 elements of constructive trust which both the parties acknowledge have been set forth recently in the case of Gulack v. Gulack, 30 Conn. App. 305 (1993).
In that case, the court makes it clear that the elements of a constructive trust are: 1) the intent by a grantor to benefit a third person; 2) the transfer of property to another to benefit the third person; 3) the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person; and 4) the unjust enrichment of the transferee if the transferee is allowed to keep the property.
The parties have provided their arguments as to whether or not these elements have been proven.
The defendant claims that there is no evidence of a confidential relationship and even if there is such a relationship, the elements of constructive trust have not otherwise been proven. The plaintiff, on the other hand, claims that the testimony suggests a confidential special relationship between the decedent and his daughter Sherri Taylor the defendant, and further that there should be implied from the evidence the factual basis for the establishment of a constructive trust. The plaintiff claims that the defendant will be unjustly enriched if the trust is not imposed. The defendant claims that the enrichment which admittedly has occurred is a justified, intentional effort by the decedent to benefit his daughter Sherri Taylor.
The plaintiff also claims that a special defense based on the Statute of Frauds is not appropriate in an equitable matter claiming the benefits of cases such as Filosi v. Hawkins, 1 Conn. App. 634 and Cohen v. Cohen, 182 Conn. 193. The plaintiff also claims that the defendant has the burden of proof once a confidential relationship has been established especially when the defendant is claiming the benefit of an inter vivos gift.
The court having considered carefully the arguments of the parties finds that whether the court utilizes a standard of a preponderance of the evidence or the clear and convincing or clear and satisfactory evidence standard, it has been proven that the defendant Sherri Taylor enjoyed a special CT Page 1122 confidential relationship with her deceased father at the time of the transfers in question.
The court also finds from the evidence, however, that the decedent intended that the property transferred into the defendant's name during his lifetime was to be her property and not to be received in trust for the benefit of the six children of the union of Lester Taylor, Sr. and Dorothy Louise Boyle.
The court does not find the Statute of Frauds to be applicable but its application in any event is moot by virtue of the above factual finding.
The court notes that the decision required by the law and the facts found in this case does not necessarily infer that the decedent did not have excellent relations with all of his children nor that the family was any less than fully harmonious. The evidence does suggest and the court finds that there are differences among the decedent's children which he could have been taking into account at the time he decided what to do with his assets. The suggestions as to the other possible reasons for the transfers whatever they may mean to the plaintiffs individually are just too vague and tenuous to override the clear language of the documentation. This is not a case of a picture hanging on a wall or other personal property where some doubt could exist; these assets were clearly in the defendant's name and for a considerable period of time before he died. The decedent showed by reserving a life estate in the 1985 deed that he knew how to handle such matters if he had intended to restrict the gifts to his daughter Sherri. None of the plaintiffs' witnesses explained why the decedent would have waited until after the six children of his "second" marriage were grown to have started to "hide" his assets from his first, undisclosed family. Or why, if the decedent had such intentions, he would not have made all the transfers at one time and included all his assets.
There was some evidence which the court credits that the defendant herself may have, after her father's death, planned to share some of his assets with her siblings at one time, but that is not proof sufficient to impose the constructive trust.
Whether the court considers that the defendant or the CT Page 1123 plaintiffs have the burden of proof in this case, or which ever standard is applied, it is clear that the factual basis for a constructive trust is not to be found in the evidence in this case.
Accordingly, judgment is entered for the defendant, without costs.
LEUBA, J.