[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The plaintiff has moved to strike the two counts of the defendant's counterclaim in this residential summary process action. The premises in question is a single family house at 100 Anson Street, Stratford, Connecticut. The defendant's counterclaims seek the imposition of a constructive trust on the plaintiff's legal title to the real property and seeks a declaratory judgment that the defendant is the beneficial owner of the real property or an owner requiring the plaintiff to transfer and convey the premises to the defendant.
The plaintiff's Motion to Strike claims that the defendant's counterclaims fail to state a claim upon which relief may be granted.Practice Book § 151(1) The plaintiff states four grounds for his Motion to Strike; (1) the failure to allege an intent by a grantor to benefit the defendant, (2) failure to allege a special or confidential relationship between the transferor and the transferee, (3) failure to allege unjust enrichment which is a required element of a constructive trust, and (4) the allegations of laches and equitable estoppel in the second count of the counterclaim are not separate allegations nor does the second counterclaim contain the necessary elements of those two different legal doctrines.
"Whenever a motion to strike is filed and more than one ground of decision is set up therein, the judge, in rendering the decision thereon, shall specify in writing the grounds upon which that decision is based." Practice Book § 156. Both parties requested a written CT Page 8549 decision even though the court indicated that it was ready to rule from the bench. Under these circumstances when both parties are not willing to waive the written decision rule of Practice Book § 156, the court must written render its opinion in writing.
FACTS
The plaintiff and the defendant are former husband and wife. They were married on September 26, 1976 and their marriage was dissolved on March 24, 1991. The defendant was awarded custody of the minor child issue of that marriage. The child is now seventeen years old. After dissolution the defendant married another and had another child issue of that union. That marriage was dissolved. Prior to that dissolution the plaintiff and the defendant began to cohabit in the defendant's house in Monroe, Connecticut.
At the plaintiff's request the defendant went house hunting and located a suitable residence at 100 Anson Street, Stratford, Connecticut. On June 18, 1987 the defendant did purchase that house for $190,000.00 and the defendant and her minor children have since occupied those premises. Title was taken in the plaintiff's name. The defendant has alleged in her counterclaim "relying on the plaintiff's offer to purchase her a house, the defendant located a suitable residence at 100 Anson Street, Stratford, Connecticut and the plaintiff orally told the defendant that he would buy the house for the defendant and her children, that the house would be hers and would always be hers until the day she died."
On December 13, 1994 the plaintiff caused to be served on the defendant a notice to quit requiring the defendant to vacate the premises at 100 Anson Street, Stratford, Connecticut on or before December 21, 1994. The Notice to Quit contained only one reason, "Although you originally had the right or privilege to occupy the premises located at 100 Anson Street, Stratford, Connecticut, other than under a rental agreement or lease, such right or privilege has terminated."
The defendant did not vacate and this summary process action was commenced on December 22, 1994. Multiple pleadings have been filed including extensions of time within in which to plead, requests to revise and objections thereto. Both parties have furnished the court with memorandum of law and reply memorandum. There was extensive oral argument on the motion to strike.
DISCUSSION OF LAW
CT Page 8550
A motion to strike tests the legal sufficiency of a pleading.Practice Book § 152; Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170 (1988), Mingachos v. CBS, Inc., 196 Conn. 91, 108
(1985). In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. King v. Board of Education,195 Conn. 90, 93 (1985). For the purposes of determining the motion, it admits the truth of the facts well pleaded but will not admit the truth or accuracy of conclusions or opinions of the pleader. Verdonv. Transamerica Insurance Co., 187 Conn. 363, 365 (1982). The courts can not assume a fact which has not been alleged. Mingachos v. CBS,Inc., supra 108. The court must construe the facts in the counterclaim most favorable to the defendant. Amodio v. Cunningham,182 Conn. 80, 82-83 (1980).
A motion to strike is the proper motion to test the legal sufficiency of the defendant's two counterclaims. Practice Book § 152(1)
There can be no consideration of facts outside the pleadings in determining whether or not a motion to strike ought to be granted.Verdon v. Transamerica Insurance Co., supra 365. A speaking motion to strike (speaking demurrer) is not permitted. Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541, 545 (1980). If facts provable in the counterclaim support a cause of action or if any part of the counterclaim is valid the motion to strike must be denied. Doylev. A.P. Realty Corp., 36 Conn. 126, 128 (1980).
This case does not involve a dissolution of marriage. There is no allegation that the plaintiff and defendant, after the defendant's termination of her second marriage, remarried. C.G.S § 46b-22.
This case does not involve a modification of the terms of the 1991 decree of dissolution of marriage. The pleadings do not reveal the terms of the dissolution, whether or not any modification of those terms has been or is pending nor whether or not the party's 1991 dissolution occurred in the State of Connecticut. In any event the Housing Session has limited jurisdiction and a dissolution of marriage and/or a modification of any dissolution terms is not within the ordinary venue of the Housing Session. Connecticut General Statutes § 51-348(b);Connecticut General Statutes § 47a-68; Connecticut General Statutes §46b-86.
This case does not involve a common law marriage. Common law marriages are generally not recognized in Connecticut in light of public policy. McAnerney v. McAnerney, 165 Conn. 277, 285 (1973). "Although other jurisdictions may recognize common-law marriage or accord legal CT Page 8551 consequences to informal marriage relationships, Connecticut definitely does not. . . . It follows that although two persons cohabit and conduct themselves as a married couple, our law neither grants to nor imposes upon them marital status." (Internal citations omitted) McAnerney,
supra 285. "In the eyes of the law, needless to say, a divorced pair could be but two single persons desirous of acquiring marital status. Thus, it is clear that no act whatsoever could have revested legal status in the previously terminated marriage." Hames v. Hames,163 Conn. 588, 594 (1972).
This case does not involve, based on the current status of the pleadings, a claim for property division based on ordinary contract principles. Contract public policy is strong in Connecticut and the well publicized doctrine first announced in Marvin v. Marvin, 18 Cal. 3
rd. 660, 683, 557 P.2d 106, 134 Cal.Rptr. 815 (1976) is the law in Connecticut. "We agree with the view set forth in Marvin v. Marvin,
supra 665 that the courts should enforce express contracts between nonmarital partners except to the extent that the contract is explicitly founded on the consideration of the meretricious sexual services. . . In the absence of an express contract, the courts should inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties." Boland v. Catalano,202 Conn. 333, 340-341 (1987). Lovallo v. Guerrera,3 Conn. L. Rptr. 830,1991 Ct. Sup. 2900, 2904 6 CSCR 459, (1991) (McWeeny, J.).
This case does involve the three separate doctrines of constructive trust, laches and equitable estoppel. Those theories are now permitted as special defenses and counterclaims in summary process cases. "These significant changes persuade us that the legislature no longer considers summary process as necessarily excluding complex questions which would formerly have required its dismissal. As we read the current statutory scheme, where, as here, such a summary process action is brought in the first instance to the housing division, as it must be, and the issue of complexity is raised, the housing division judge must exercise the court's discretion in deciding whether to hear the case. That discretion includes, inter alia, the degree of complexity of the factual and legal issues, the likely time requirements for trial, the need for discovery and the degree of discovery which is reasonably required, whether complex defenses will be raised in good faith, the impact of hearing the case on the rest of the summary process docket, and whether other actions for similar relief are pending elsewhere." SouthlandCorporation v. Vernon, 1 Conn. 439, 449 (1984).
A counterclaim for the imposition of a constructive trust has been CT Page 8552 found to be proper in defense of a summary process case. Filosi v.Hawkins, 1 Conn. App. 634, 638 (1984). In Filosi the plaintiff claimed possession of an East Lyme property occupied by the defendants who were the plaintiff's daughter and his daughter's husband. The court held that the plaintiff held title to the property as a constructive trustee for the defendants and that the plaintiff has been unjustly enriched as a result of the defendant's efforts. Filosi v. Hawkins, supra 635.
Equitable defenses are permitted to be raised in summary process.F.B. Fountain Co. v. Stein, 97 Conn. 619, 624 (1922); Fellows v. Martin,217 Conn. 57, 65-67 (1991). Laches and equitable estoppel appear to be equitable defenses applicable in summary process cases. Mobilia, Inc.v. Santos, 4 Conn. App. 128, 131 (1985); Zitomer v. Palmer,38 Conn. Sup. 341, 345 (1982). O. P. Realty v. Santana,17 Conn. App. 314, 319 (1989).
This case therefore involves, as far as the Motion to Strike is concerned, the issue as to whether the defendant's two counterclaims contain the proper allegations to demonstrate the defenses of constructive trust, laches and equitable estoppel. The court is of the opinion that the allegations of the first count as to constructive trust are sufficient to withstand the motion to strike. The allegations of the second count are insufficient to state a counterclaim for laches and/or equitable estoppel.
LACHES AND/OR EQUITABLE ESTOPPEL
The court will consider first the motion to strike regarding the counterclaim for laches and/or equitable estoppel contained in the second count of the defendant's revised counterclaim dated April 26, 1995. The allegations of the entire eleven paragraphs of the first count are restated as the first eleven paragraphs of the second count. Paragraph twelve of the second count states as follows; "The plaintiff is estopped by laches from asserting any ownership interest in the subject premises and from prosecuting the instant summary process action." There are no further allegations supporting the claim of laches and/or equitable estoppel in the second count of the defendant's counterclaim.
"Laches consists of an inexcusable delay which prejudices the defendant. Danaher v. C.N. Flagg Inc. Co. 181 Conn. 101, 107,434 A.2d 944 (1980). Laches consist of two elements. First, there must have been a delay that was inexcusable, and second, that delay must have prejudiced the defendant. Kurzatkowski v. Kurzatkowski, 142 Conn. 680,684-85, 116 A.2d 906 (1955)." Federal Deposit Ins. Co. v. Voll
CT Page 855338 Conn. App. 198, 210 (June 13, 1995). The mere lapse of time does not constitute laches. Leary v. Stylarama of New Haven, Inc.174 Conn. 217, 219 (1978).
In its traditional form the doctrine of equitable estoppel states that a party (1) who is guilty of misrepresentation of existing facts including concealment, (2) upon which the other party justifiably relies, (3) causing injury thereby is estopped from denying his utterance or acts to the detriment of the other party. Calamari andPerillo, Contracts 3d. Ed. (1987) Section 11-29b, p. 489. "Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done." Bozzi v. Bozzi, 177 Conn. 232,242 (1979); Dornfried v. October Twenty-Four Inc., 230 Conn. 622,635 (1994); Connecticut National Bank v. Voog, 233 Conn. 352, 366
(May 30, 1995).
The allegations of the second count of the counterclaim failed to allege the necessary elements of laches. The allegations of the second count of the counterclaim failed to allege the necessary allegations of equitable estoppel. Although the plaintiff has filed a motion to strike, the defendant has the right to file a new pleading, "Within fifteen days after the granting of any motion to strike." Practice Bookof § 157. Furthermore upon filing that new pleading, if both laches and equitable estoppel are contained in these same count of the counterclaim, the plaintiff has the right to file a request to revise seeking the separation of causes of action into two separate counts.Practice Book § 147(3) Therefore it appears to the court that in the event that the defendant wishes to plead over her counterclaims of laches and equitable estoppel, they must be contained in two separate counts alleging the appropriate elements. The Motion to Strike the second count of the counterclaim is hereby granted.
CONSTRUCTIVE TRUST
"The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. . . Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Banthin v.Shoreline Plumbing Heating Supply Co., 30 Conn. App. 637, 639 (1993);Cohen v. Cohen, 182 Conn. 193, 202-203 (1980); Wing v. White,14 Conn. App. 624, 644 (1988). "Before a constructive trust can be created, CT Page 8554 however, there must be a duty owed, or a fiduciary or otherwise special relationship between the parties." Filosi v. Hawkins, supra 639;Downey v. Downey, 1 Conn. App. 489, 495 (1984). "In order for a constructive trust to be imposed, the plaintiff must allege fraud, misrepresentation, imposition, circumvention, artifice, or concealment or abuse of confidential relations." Wing v. White, supra 644; Worobeyv. Siebieth, 136 Conn. 352, 356 (1949). An examination of a number of Connecticut cases leads to the conclusion that there is no one method of listing a finite number of elements that if alleged and proven would amount to a constructive trust. "It would serve no present purpose to attempt to catalogue the various situations which fall within the designation constructive fraud, even if that were possible." Worobeyv. Siebieth, supra 356.
FAILURE TO ALLEGE INTENT BY THE GRANTOR TO BENEFIT THE DEFENDANT
The first grounds for the Motion to Strike is that the counterclaim does not "allege an intent by a grantor to benefit the defendant, Laurie Castaldo." In support of that argument the plaintiff claims that there are three elements of a constructive trust. "The elements of a constructive trust are the intent by a grantor to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property."Gulack v. Gulack, 30 Conn. App. 305, 310, (1993).
The plaintiff argues that the seller of the property to the plaintiff must have intended that 100 Anson Street benefit the defendant. The plaintiff misdescribes the facts of Gulack
and the relationship of the parties. An unidentified party conveyed New Fairfield real property to George Gulack. Georges' brother, Max Gulack, provided all the consideration for the purchase. Title was placed in the name of his brother George. At the time of the purchase Max declared that he bought the property for the plaintiff, Elaine Gulack and her husband Howard, for use as their marital residence. The plaintiff and her husband, Howard lived in the property since its 1976 purchase. In 1978 George Gulack and the defendant his wife, Fay Gulack moved into the house, built an addition and lived there until 1983. The defendant and George Gulack moved to Florida where George died in 1987 Max died in 1988. From 1976 Max paid all the taxes and insurance on the house and charged no rent. By a probate decree the title to the property passed to the defendant, Fay Gulack. In response to a 1989 eviction proceeding brought by her mother-in-law, the plaintiff Elaine Gulack and Howard brought an action of constructive trust. The judgment CT Page 8555 awarding title to the real property to the plaintiffs on the theory of a constructive trust was upheld by the Appellate Court. The court determined there was a confidential relationship between Max and George as brothers (the transferor and the transferee), yet Max never held title or transferred the property. Therefore the intent of the grantor in the original conveyance from the grantor to George Gulack was irrelevant. The intent of the grantor was irrelevant in Gulack and is equally in irrelevant in this case.
Furthermore the quotation from Gulack at page 310 cited above was not and did not overrule the general rule of law as to constructive trusts. There are a myriad of factors that must be considered prior to the imposition of a constructive trust. One of these could be "the intent by a grantor to benefit a third party."
This court determines that the grantor must be the plaintiff, Jeffrey Castaldo and the third party is the defendant, Laurie Castaldo. The plaintiff has alleged such an intent in paragraph 5 and 6 of the revised counterclaim dated April 26, 1995.
 5. The defendant did in fact cohabit with the plaintiff for approximately one year, during which time the defendant was orally told by the plaintiff to go house hunting and he would buy her the most suitable house in a specific price range.
 6. Relying on the plaintiff's offer to purchase her a house, the defendant located a suitable residence at 100 Anson Street, Stratford, Connecticut and the plaintiff orally told the defendant that he would buy the house for the defendant and her children, that the house would be hers, and would always be hers until the day she died.
Therefore the defendants has alleged an intent by Jeffrey Castaldo to benefit the defendant. The intent of the original transferor to Jeffrey Castaldo is not relevant. Cohen v. Cohen, 182 Conn. 193, 203
(1980).
THE DEFENDANT HAS ALLEGED SUFFICIENT GROUNDS TO STATE A SPECIAL ORCONFIDENTIAL RELATIONSHIP
This case involves a special or confidential relationship. Under certain circumstances a duty can arise upon which a constructive trust can be imposed. One of those circumstances is a special or confidential relationship. Gulack v. Gulack, supra 310. Filosi v.Hawkins, supra 638. It is not necessary that the confidential or CT Page 8556 special relationship be a fiduciary relationship. It is sufficient for a family relationship to exist for it to be a special relationship.Filosi v. Hawkins, supra 638.
In paragraph four of the revised counterclaim the defendant has alleged "during the defendant's marriage to said Magliochetti, the plaintiff and the defendant maintained a special relationship, albeit former husband and wife". In paragraph seven of the revised counterclaim the defendant alleges "that the defendant has occupied said premises from that date to the present in reliance upon her special trust and confidence in the plaintiff that he had in fact purchased the house for here and that she was the record owner of the premises". In paragraph eleven the revised counterclaim the defendant alleges "on January 7, 1995 the plaintiff instituted the present action for the purpose of evicting the defendant from said premises which action is contrary to and in total disregard of the trust and agreements under which title was to have been held by the defendant, is a breach of the plaintiff's promises to purchase the property for the defendant, and will unjustly enrich the plaintiff if he is allowed to retain title." The defendant has alleged a special or confidential relationship.
Courts have found that the following situations are relevant to a special or confidential relationship: Filosi v. Hawkins,
supra 639 parent and child, a constructive trust was imposed on the property for (the benefit of the plaintiff's daughter and the plaintiff's son-in-law). Downey v. Downey, supra 495 (non resident stepmother not in a special relationship with the step child after the natural father's death). Zack v. Guzauskas,171 Conn. 98, 104 (1976) (insufficient evidence to establish a special or confidential relationship between parents-in-law and daughter-in-law, relationship between parents-in-law and daughter-in-law is ordinarily not one of special trust and confidence). Worobey v. Siebieth, supra 359 (parent and child, attorney and client, guardian ward trustee and cestui que trust are confidential relationships imposed by operation of law or voluntarily assumed). Hemingway v. Coleman, 49 Conn. 390,392 (1881) (Former employee in the oyster business and current friend is not sufficient to establish confidential relationship in suit involving sale of oyster beds by friend to the former employer). Hemingway v. Coleman, supra 392 in dicta (confidential relationship imposed by operation of law or voluntarily assumed include principal and surety, partner and partner, landlord and tenant or others of kindred character). Starzec v. Kida,183 Conn. 41, 43 (1981) (Husband and second wife have a confidential relationship and a constructive trust was imposed on real estate CT Page 8557 inherited by second wife for benefit of husband's children not of this second marriage). Cohen v. Cohen, supra 203. (Confidential relationship between mother and son) Dunham v. Dunham,204 Conn. 303, 320 (1981). (Brothers as heirs of their father's estate are in a confidential relationship. McCook v. Coutu,31 Conn. App. 696, 702 (1993) (Appellate Court had opportunity to declare that unmarried lovers in a constructive trust suit over title to real property were not in a confidential relationship as a matter of law, but decided that the facts found were insufficient for review).
"Where there is no proof of an actual confidential relationship and the law looks only to a presumption of fraud arising out of the relationship of the parties to each other, that relationship must be one where there is ordinarily a special trust and confidence and the likelihood of the exercise of personal influence and control such that one expect of the other fair dealing and mutual consideration." Worobeyv. Sibieth, supra 359. Downey v. Downey, supra 495. "What relations between parties will be deemed by equity to be so confidential as to be a basis upon which it will raise a trustis, of course, impossible of definition." Worobey v. Siebieth, supra 359. There is no bright line test as to what is or is not a special or confidential relationship. In 1976 a daughter-in-law was held not to be in a special relationship with her parents-in-law. Zack v. Guzauskas, supra 104, yet in 1984 a son-in-law was held to be in a special relationship with his father-in-law. Filosi v. Hawkins, supra 639.
"Rather than attempt to define `a fiduciary relationship in precise detail and in such a manner to exclude new situations, we have instead chosen to leave `the bars down for situations', in which there is a justifiably trust confided on one side and a resulting superiority and influence of the other." Durham v. Durham, supra 320. "But equity has carefully restrained from defining a fiduciary relationship in precise detail and in such a manner as to exclude new situations. It has left the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." Harper v. Adametz, 142 Conn. 218, 225 (1955).
There is no common law marriage in the State of Connecticut but we do recognize contract claims. Boland v. Catalano, supra 340. Furthermore the allegations of the pleadings indicate that the plaintiff and the defendant are still related one to another, to wit; they have a parental obligation to a minor child issue of their dissolved marriage. This is sufficient under Connecticut law to allege a special or confidential relationship to be able to satisfy the allegations of CT Page 8558 a constructive trust. "It does generate a natural inclination to repose great confidence and trust." Filosi v. Hawkins, supra 639. Cohen v.Cohen, supra 203.
DEFENDANT HAS ALLEGED UNJUST ENRICHMENT WHICH IS A REQUIRED ELEMENTOF A CONSTRUCTIVE TRUST
Unjust enrichment is a basic element in all claims for a constructive trust. Filosi v. Hawkins, supra 638. Wing v. White, supra 644. "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted [benefited], (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . ."Barbara Weisman, Trustee v. Kasper, 233 Conn. 531, 550
(June 20, 1995); Hartford Whalers Hockey Club v. UniroyalGoodrich Tire Co., 231 Conn. 276, 282, 283 (1994).
The defendant has alleged unjust enrichment in paragraph eleven, "will unjustly enrich the plaintiff if he is allowed to retain title."
In nonmarital family matters the Connecticut Supreme Court has held that a constructive trust is a possible remedy. "The courts may also employ the doctrine of quantum meruit or equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case." Boland v. Catalano, supra 341.
A Motion to Strike shall not be used to determine facts. Mingachosv. CBS, Inc., supra 108. Family matters involving issue of allocation or ownership of assets are intensely fact sensitive, Glinski v. Glinski,26 Conn. App. 617, 620 (1982). A recent Superior Court case involving an unmarried couple contained counts in implied oral contract, quantum meruit, unjust enrichment and breach of an oral partnership agreement.Wilson v. Overton, 5 Conn. L. Rptr. 347, 7 CSCR 69, 1991 Cf. Sup. 10537, (1991) (Pickett, J.). Such fact sensitive cases are not easily decided by a Motion to Strike. Amodio v. Cunningham, supra 83. McAnerney, supra 282.
This court has found two cases which have substantial similarities to the facts alleged. Wanta v. Wells, NH-640, 14 Conn. L. Rptr. 53 (March 30, 1995) (Jones, J.) involved the issue of whether the claims of mutual ownership of premises arising out of a cohabitant relationship should be resolved in a summary process proceeding in Housing Court. Ms. Wells and Mr. Warta, although not married have two children together and lived together in the premises owned by the plaintiff for many years. The plaintiff has now sued in summary process after serving a notice to quit. Ms. Wells CT Page 8559 has counterclaimed seeking a declaration that the parties are joint beneficial owners of the premises. The plaintiff then upon withdrew his summary process complaint and has moved to strike the counterclaim from the Housing docket. Although the court determined that the issues are complex, Judge Jones held that "the case at hand is properly before the housing division. . ."
Spatola v. Spatola, 4 Conn. App. 79 (1985) involved a suit for the imposition of a constructive trust on real property purchased by the plaintiff ex-husband after the parties dissolution of marriage and placed in the joint names of the plaintiff and the defendant ex-wife. After a four and one half year marriage was dissolved in 1979, the parties shortly thereafter reconciled. During the period of reconciliation the plaintiff purchased a house which he placed in joint title. There was no remarriage. The reconciliation failed. The plaintiff sued to obtain the defendants, ex-wife's interest in the property. The defendant counterclaimed for a sale of the premises and a division of the proceeds. The plaintiff's claim of constructive trust, resulting trust and unjust enrichment were rejected and the court rendered judgment for the defendant on her counterclaim. The Appellate Court found no error.
In a fact driven decision the Appellate Court discussed the theories of constructive trust, resulting trust and unjust enrichment. The court had to determine the intent of the parties. "Intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which could not reasonably be drawn." Spatola v. Spatola, supra 82. The Appellate Court could have, under the facts of this case, determined that the former Mr. and Mrs. Spatola did not have a confidential or fiduciary relationship as a matter of law. The court chose not to do so. The decision of such an issue is for the trier of fact.
The Motion to Strike the first count is hereby denied for the reasons set forth in this opinion.
The Motion to Strike the second count as to laches and equitable estoppel is hereby granted for the reasons set forth in this opinion. CT Page 8560