[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These consolidated cases both arise out of the rental of a street-sweeping machine by Capitol Sweeping Services, Inc. ("Capitol"), the plaintiff in the first action, to Peter Viltrakis doing business as Superior Ground Maintenance, a defendant in the first action who is also the plaintiff in the second action. The sweeper was substantially damaged while in the possession of Viltrakis and was declared a total loss. The parties stipulated that the loss was $17,234.44. Capitol brought the first action to establish Viltrakis' liability for the loss, which is contested. Viltrakis brought the second action against his insurance agency, Commercial Insurance Associates ("CIA"), contending that if Viltrakis is liable to Capitol for the loss of the sweeper, CIA is liable to Viltrakis for failure to obtain insurance coverage for that loss.
Capitol's claim against Viltrakis is set forth in an eight-count complaint in the first action. (Superior Ground Maintenance, L.L.C. is also a defendant in the action. However, the uncontroverted evidence at trial was that the corporation was not created until several months after the loss of the sweeper. CT Page 234-BB Accordingly, judgment is entered for Superior Ground Maintenance, L.L.C. on all the counts against it.) Capitol's claim against Viltrakis for the loss of the sweeper sounds in negligence, bailment and breach of contract.
With respect to the breach of contract claim, there is no dispute that the sweeper was rented to Viltrakis pursuant to a written rental agreement dated April 27, 1994 and signed by an authorized employee of Viltrakis'. The agreement contained provisions requiring Viltrakis to return the sweeper in as good condition as it was received, providing that Viltrakis was responsible for the condition of the machine while in his possession, and that he would be responsible if the machine were unavailable for return to Capitol. It is further conceded that the sweeper was substantially damaged while it was in Viltrakis' possession and that it was never returned to Capitol.
Viltrakis contends, however, that Capitol should be equitably estopped from recovering for a breach of the rental agreement. He claims that Capitol should be estopped from enforcing the rental agreement based on the following facts: one of the owners of Capitol obtained an insurance certificate from CIA as Viltrakis' insurance agency, spoke with CIA about Viltrakis' insurance coverage for the sweeper and satisfied itself (erroneously as it later turned out) that Viltrakis had insurance coverage to CT Page 234-CC replace the sweeper if it were damaged.
Any claim of equitable estoppel must rest on proof of two elements. Palumbo v. Papadopoulos, 36 Conn. App. 799, 801 (1995). The first element is that the party against whom estoppel is claimed must do or say something intended to induce another party to believe that certain facts exist. Id. In this case, Viltrakis contends that Lisa Kuhns, one of Capitol's owners, told him that she was satisfied with the information she obtained with respect to Viltrakis' insurance coverage for the sweeper and that her statement satisfies the first required element for equitable estoppel. The evidence at trial, however, did not establish that Kuhns made such a statement to Viltrakis. Viltrakis testified that after Kuhns was sent the insurance certificate from CIA, he called her to verify that she had received it and to arrange the sweeper rental. He testified that Kuhns verified that she had received the certificate, but that she did not say whether she was satisfied with the coverage. Viltrakis therefore failed to establish the necessary first element for the defense of equitable estoppel.
Judgment for $17,234.44 is entered for Capitol against Viltrakis on the fifth count of the amended complaint, alleging breach of contract. It is therefore unnecessary to address the remaining counts alleging negligence and bailment. CT Page 234-DD
Capitol has also pleaded a claim against Viltrakis with respect to a $3,000. check issued to Viltrakis by his insurance company. The company initially denied Viltrakis' claim with respect to the loss of the sweeper, but approximately two months prior to the trial in this case the insurer decided the claim came within the policy coverage for personal property of others under Viltrakis' possession or control. The limit for this coverage was $3,000 and the company issued a check in that amount payable to Viltrakis. Viltrakis held the check, neither depositing it nor endorsing it to Capitol. Capitol contends that Viltrakis would be unjustly enriched if he were permitted to retain the funds from the check and seeks the imposition of a constructive trust with respect to the proceeds of the check. Viltrakis contends that there is no basis for the imposition of a constructive trust, although he concedes that these funds are available to satisfy any judgment against Viltrakis.
Capitol correctly states that the imposition of a constructive trust is an equitable, remedial device intended to prevent unjust enrichment. Filosi v. Hawkins, 1 Conn. App. 634,638 (1984). A constructive trust can be employed by the courts when property has been acquired under circumstances such that the owner should not in good conscience retain the beneficial interest in the property. Id. Equity creates the trust by CT Page 234-EE changing the owner into a trustee. Id. There are, however, requirements for the imposition of a constructive trust.
The plaintiff must allege and prove fraud, misrepresentation, unconscionable conduct, circumvention, artifice or concealment in order to provide the basis for a constructive trust. Wing v.White, 14 Conn. App. 642, 644 (1988). The party sought to be held liable for a constructive trust must have engaged in conduct that wrongfully harmed the plaintiff. Aetna Life Casualty Co. v.Union Trust Co., 230 Conn. 779, 791 (1994); Wendell CorporationTrustee v. Thurston, 239 Conn. 109, 113 (1996). Capitol neither alleged nor proved any species of fraud or unconscionable conduct on the part of Viltrakis. Viltrakis has not wrongfully harmed Capitol. Viltrakis disputed his liability to Capitol and decided reasonably to hold the $3,000 pending a ruling by the court on his liability.
An alternate ground for the imposition of a constructive trust is the existence of a confidential relationship between the transferor and the transferee of the property such that the transferor has justifiable confidence in believing that the transferee will act in the interest of the transferor. Gulack v.Gulack, 30 Conn. App. 305, 312 (1993). Examples of such a confidential relationship are a fiduciary relation or a family relationship. Id. CT Page 234-FF
Capitol made no showing of a special confidential relationship between Viltrakis and his insurance company. The insurer paid the coverage limit of $3,000 to Viltrakis because of a contractual requirement, not because of a special relationship such as a fiduciary relationship. No evidence was presented that the insurer had any expectation with respect to Viltrakis' disposition of the funds from the check.
There is no basis for the imposition of a constructive trust on these facts. Judgment is entered for Viltrakis on the seventh count of the complaint.
The file in the first action reveals that the plaintiff made an offer of judgment in the amount of $15,510.96 within eighteen months from the filing of the complaint. In accordance with General Statutes § 52-192a, the plaintiff is entitled to interest on the amount of the judgment at the rate of 12 percent per year from September 18, 1995 to the date of judgment and judgment is entered accordingly. The court declines to award the plaintiff attorney's fees as permitted under the statute.
In the second of these two actions, Viltrakis seeks judgment against CIA, his insurance agency, for his liability to Capitol. Viltrakis' claim is set forth in a three count complaint alleging CT Page 234-GG negligence, misrepresentation and detrimental reliance and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. ("CUTPA"). The facts relating to this claim are as hereafter set forth.
Peter Viltrakis employed his mother, Carol Viltrakis, in his business known as Superior Ground Maintenance. In connection with renting the sweeper from Capitol, Peter told his mother that Capitol required a certificate of insurance and asked her to obtain it from CIA. Carol Viltrakis testified that she then called CIA and spoke with Martha Zaparesky, a customer service representative and licensed insurance agent at CIA with whom Carol Viltrakis had spoken previously with some frequency. She stated that she told Zaparesky that Superior would be renting a Tennant sweeper and that they wanted to make sure that there was insurance coverage for the sweeper if it were damaged. She testified that she was "sure" that she told Zaparesky this. Ms. Viltrakis testified that Zaparesky replied affirmatively and arranged for an insurance certificate to be sent to Capitol. After Capitol received a copy of the certificate, the sweeper rental was arranged.
Zaparesky testified that she remembered receiving a telephone call from Carol Viltrakis just before April, 1994 and that she arranged for a certificate of insurance. She testified that she CT Page 234-HH did not recall that Ms. Viltrakis stated that the certificate related to a Tennant sweeper. Zaparesky acknowledged that if Ms. Viltrakis asked for replacement coverage for the sweeper, which had to be separately arranged under Superior's policy at that time by obtaining a model number and a replacement value for the machine, a mistake was made. She further conceded that if she stated that there was replacement coverage for the sweeper, that too was a mistake.
The court credits the testimony of Carol Viltrakis with respect to the representation of replacement coverage by Zaparesky. Viltrakis testified credibly and Zaparesky's testimony did not conflict with Viltrakis' testimony. Zaparesky recalled that there was a conversation, but she did not recall the substance of that conversation.
The credibility of Carol Viltrakis' testimony was reinforced by the testimony of Lisa Kuhns from Capitol, who also was told by a CIA representative that Viltrakis had replacement coverage for the sweeper. Kuhns testified that when she received the insurance certificate from CIA, she called CIA to verify that there was replacement coverage for the machine. She stated that she asked for "John" because the certificate was signed by John Caldarella (the owner of CIA) and that she spoke with him and he verified that Superior's insurance included replacement coverage. Kuhns CT Page 234-II then wrote "called has replacement coverage" on her copy of the insurance certificate, a copy of which was made an exhibit at trial.
Zaparesky's assurance of insurance coverage for damage to the sweeper constituted a negligent, innocent misrepresentation. There was no evidence to suggest that it was a knowing or intentional misrepresentation. In Zaparesky's own words, it was "a mistake."
An innocent misrepresentation can be actionable if the declarant has the means of knowing or the duty to know the truth.Richard v. A. Waldman Sons, Inc., 155 Conn. 343, 346 (1967). A defendant who makes a statement of fact about which it had a "special means of knowledge," a matter relative to its business, will be liable if the representation is false, even though unknowingly so. Id., 347.
In a case somewhat similar factually to the present case, a defendant employer was held liable for negligently misrepresenting the insurance coverage provided to employees.Boucher v. Valus, 6 Conn. Cir. Ct. 661 (1972). The court found that the defendant was in the business of supplying information for the guidance of its employees and it had a duty of reasonable care in providing such information. The court held that the CT Page 234-JJ defendant breached its duty by negligently misrepresenting the insurance coverage without any investigation, knowing that the plaintiffs would rely on the representation to their detriment.
The court finds that CIA is liable for Zaparesky's negligent misrepresentation concerning insurance coverage. CIA was in the business of procuring insurance and as Viltrakis' insurance agency, clearly had the means and duty of knowing accurately the extent of Viltrakis' insurance coverage. CIA negligently misstated the coverage knowing that Viltrakis would rely on the statement. Viltrakis did rely on the misstatement to his detriment. Judgment is entered in the second action on the second count in favor of Viltrakis against CIA for damages of $17,234.44.
In the third count of the complaint in the second action, Viltrakis alleges that CIA's negligent misrepresentation constitutes a CUTPA violation. CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b(a). In determining whether an act constitutes a violation of CUTPA, our Supreme court has adopted the criteria of the so-called "cigarette rule" employed by the federal trade commission. Williams Ford, Inc. v. Hartford CourantCo., 232 Conn. 559, 591 (1995). CT Page 234-KK
The cigarette rule is comprised of three prongs. Id. The first is whether the act or practice offends public policy as established under the common law, statutes or concepts of unfairness. The second prong is whether the act is immoral, unethical, oppressive or unscrupulous. The third is whether it causes substantial injury to consumers. Id.
When the underlying claim is one of negligence, satisfaction of the first prong alone is not sufficient to establish a CUTPA violation. Id.; A-G Foods, Inc. v. Pepperidge Farm, Inc.,216 Conn. 200, 216 (1990). In this case, however, the first prong is not satisfied because an innocent misrepresentation does not offend public policy as set forth in the common law, statutes or concepts of unfairness. The act in question was simply a mistake. We then turn to the second and third prongs. The court finds that CIA's innocent misrepresentation was not immoral, unethical, oppressive or unscrupulous. The second prong therefore is not satisfied.
The third prong is whether the act causes substantial injury. Such a determination requires satisfaction of three tests, the first of which is that injury must be substantial. Id. Viltrakis failed to present any evidence on which the court could base a finding that the loss of $17,234.44 is substantial. No evidence CT Page 234-LL was presented with respect to the annual income of Superior Ground Maintenance, the amount of its assets or any other factual basis to support a finding that the injury was substantial. The third test therefore has not been satisfied.
None of the prongs of the cigarette rule is satisfied by CIA's negligent misrepresentation. Accordingly, the court cannot find a CUTPA violation and judgment is entered for CIA on the third count of the complaint in the second action.
VERTEFEUILLE, J.