FRED L. DEWITT, JR. *v.* JOHN HANCOCK MUTUAL
LIFE INSURANCE COMPANY
(3158)

BORDEN, DALY and BIELUCH, Js.

---

Argued October 10—decision released December 10, 1985

*Joseph Dimyan,* with whom, on the brief, was *Robert Eberhard,* for the appellant (plaintiff).

*Timothy G. Atwood,* with whom, on the brief, was *Suzanne E. Baldasare,* for the appellee (defendant).

BORDEN, J. The plaintiff appeals from the trial court's judgment upholding the defendant's refusal to pay an accidental death benefit payable under a life insurance policy issued by the defendant. The only issue properly before us on appeal involves the meaning of the word "assault," as used in a policy exclusion clause.

The insured died when his car collided with another car as he was being chased at high speed by the police. The defendant paid the basic death benefit of $3822

but refused to pay the additional sum of $7644, the accidental death benefit. The term "accidental death" is defined in the policy as "death resulting directly and solely from [inter alia] [a]n accidental injury visible on the surface of the body or disclosed by autopsy . . . ." The pertinent exclusion clause states that "[n]o benefit will be payable under the 'Accidental Death Benefit' provision if the Insured's death results, directly or indirectly, or wholly or partially, from: . . . [p]articipation in an assault or felony." There is no definition of assault or felony in the policy.

Upon the defendant's refusal to pay the accidental death benefit, the plaintiff[1] initiated this action. As special defenses, the defendant alleged (1) that the insured's death was not accidental, and (2) that even if the death were accidental, the defendant is not liable pursuant to the exclusion clause because the insured's death was caused by his participation in an assault or felony. The trial court found that the fatal collision occurred on a clear night when the road was dry. During the chase, the car driven by the insured reached speeds from forty to eighty-five miles per hour, crossed over the center line four or five times and intermittently traveled without headlights. The insured was killed when his car crossed over the center line and collided with another car. The collision also injured the driver of the other car, a passenger in the insured's car and the pursuing police officer, whose car was also involved in the crash.

The trial court concluded that the insured was not engaged in a felony because no one other than he sustained "serious physical injury" as defined in General

---

[1] The named plaintiff, Fred L. DeWitt, was the father of the insured and was the beneficiary of the life insurance policy in question. He died subsequent to the initiation of these proceedings. His executrix, Mabel DeWitt, was substituted as the plaintiff. All references in this opinion to the plaintiff are to Mabel DeWitt as executrix.

Statutes § 53a-3 (4). Thus, the two arguably applicable felony statutes; General Statutes §§ 53a-59 (a) (3) and 53a-60 (a) (3); did not apply.[2] The court also concluded, however, that the insured was participating in a criminal assault in the third degree, under General Statutes § 53a-61 (a) (3), because with criminal negligence he caused physical injury to other persons by means of a dangerous instrument, namely his car. Accordingly, the court rendered judgment for the defendant. The principal issue in this appeal is whether, by interpreting the meaning of "assault" in this exclusion clause as necessitating application of these criminal statutory standards, the trial court applied "[an] erroneous rule of law material to the case." *Griffith* v. *Security Ins. Co.,* 167 Conn. 450, 455, 356 A.2d 94 (1975).

" 'Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction.' " *Griswold* v. *Union Labor Life Ins. Co.,* 186 Conn. 507, 512, 442 A.2d 920 (1982); *Downey* v. *Downey,* 1 Conn. App. 489, 493, 472 A.2d 1296 (1984). It is well established that where the terms of an insurance contract are clear and unambiguous, the court must construe the contract in accordance with that meaning. *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 509, 363 A.2d 1055 (1975); *Downey* v.

[2] The defendant does not take issue with the trial court's conclusion that the insured was not engaged in a felony at the time of his death. Although the defendant does argue in this appeal that the exclusion clause exempts it from liability because the insured's death was not "accidental," a careful reading of the trial court's memorandum of decision indicates the court's conclusion to the contrary. Because the defendant has not filed a preliminary statement of issues to preserve this adverse ruling as an alternate ground for affirming the judgment; Practice Book § 3012 (a); we decline to undertake a complete review of that ruling. See *Huybrechts* v. *Huybrechts,* 4 Conn. App. 319, 320 n.1, 494 A.2d 593 (1985). Having conducted a limited review of this claim to insure that no injustice was done to this appellee; cf. *Barrett* v. *Central Vermont Railway, Inc.,* 2 Conn. App. 530, 536 n.5, 480 A.2d 589 (1984); we see no reason to disturb that conclusion.

*Downey,* supra. Courts must avoid any tendency to "torture" a word's ordinary meaning to create ambiguity. *Downey* v. *Downey,* supra. " 'However, "[w]hen the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." *Raffel* v. *Travelers Indemnity Co.,* 141 Conn. 389, 392, 106 A.2d 716 [1954]; see also 4 Williston, Contracts (3d. Ed.) § 621.' " *Griswold* v. *Union Labor Life Ins. Co.,* supra, 513.

In approaching the problem of discerning and resolving ambiguity, it is useful to recognize that the origin of the problem lies, in large part, in the nature of words and the language they compose. As Justice Holmes wrote, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne* v. *Eisner,* 245 U.S. 418, 425, 38 S. Ct. 158, 62 L. Ed. 372 (1918). In addition, "[t]he English language, with its immense vocabulary, its paucity of inflections, its thousands of homonyms, its flexible grammar and loose syntax, offers endless danger of (or opportunity for) ambiguity." 3 Corbin, Contracts (1971 Sup.) § 543A, quoting "A Dictionary of Contemporary American Usage." We conclude that the term "assault" as it appears in this insurance contract is ambiguous, and we reach this conclusion without torturing its ordinary meaning.

As a term of art, "assault" may denote either a civil assault or a criminal assault. A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another. 1 Restatement (Second), Torts § 21. A criminal assault involves, in general, either intentional, reckless or criminally negligent conduct causing serious physical injury or merely physical injury. See General Statutes §§ 53a-59 through

53a-61a. Further, interpreting the word "assault" in relation to those words which are syntactically connected with it in the policy, we discern at least three possible meanings: (1) emphasizing the strictly criminal meaning of the word felony, the phrase "assault or felony" may mean *"criminal* assault or *felony";* (2) emphasizing the conjunction, "or," and the criminal meaning of "felony," the phrase may mean *"civil* assault *or* felony"; and (3) emphasizing the phrase "or felony," the phrase "assault or felony" may be broadly interpreted as *"civil or criminal* assault *or felony."* (Emphasis added.) The fact that the trial court may have correctly applied one of these meanings to the facts does not cure the underlying ambiguity in the interpretation of the words.

We adopt the view of the majority of jurisdictions which have interpreted the word, "assault," in similar contexts. That view is that an "assault" by an insured must be more than a simple assault or more than a negligent infliction of harm; it must be the kind of serious conduct which would justify a victim in using deadly force in self-defense against the insured. See annot., "Construction and effect of provisions in life or accident insurance policies referring to 'assault,' 'felony,' 'fighting,' etc., by insured," 86 A.L.R.2d 443, 445, § 3. We do so for several reasons.

First, this definition complies with the clearly established principles governing construction of ambiguous terms in insurance policies. Such terms must be interpreted to sustain the claim and cover the loss. *Raffel* v. *Travelers Indemnity Co.,* supra. Ambiguous terms in such "adhesion contracts"; 1 Corbin, Contracts (1984 Sup.) § 534; are to be construed against the insurer, a principle which applies with equal force to exclusion clauses. See *Smedley Co.* v. *Employers Mutual Life Ins. Co.,* 143 Conn. 510, 513, 123 A.2d 755 (1956). "[I]t is the duty of the insurance company seeking to limit the

operation of its contract of insurance by special provisos or exceptions, to make such limitations in clear terms and not leave the insured in a condition to be misled." *Boon* v. *Aetna Ins. Co.,* 40 Conn. 575, 586 (1874).

Second, this definition builds upon the idea of an assault as an altercation, an idea which we believe to be consistent with a layperson's understanding of the term. See, e.g., Webster, Third New International Dictionary. This conclusion also comports with the established principle that the terms in an insurance contract should be given a "common" meaning if that can sensibly be applied to the subject matter. Cf. *Griffith* v. *Security Ins. Co.,* supra, 454 (common meaning of "household" as defined in Webster's Dictionary not ambiguous).

Third, the emphasis in this definition upon the degree to which the person assaulted is justified in using force against the insured serves certain practical purposes. It shifts the focus of the trier's attention away from the particular elements of a civil or criminal assault. Thus, instead of emphasizing the degree to which a deceased insured person possessed a particular mental state to commit a civil or criminal act, the focus is upon the degree to which the victim, a potentially available witness, was justified in retaliating. In addition, this emphasis upon the degree to which the victim was justified in responding with deadly force virtually eliminates the need for labeling the deceased's conduct as either a civil or criminal assault, because the civil and criminal standards relative to the use of deadly force in self-defense are very much the same. Compare General Statutes § 53a-19 with 1 Restatement (Second), Torts § 65 (use of deadly force justified under either standard only when actor reasonably perceives himself to be threatened with such force as would cause death or great bodily harm).

Applying this definition of "assault," we hold that the facts found by the trial court do not support the conclusion that the insured's death was caused by his participation in an assault. There is nothing to suggest that any of the victims reasonably perceived himself to be threatened with great bodily harm by the defendant's conduct in such a way that the victim would have been justified in using deadly force in self-defense. Thus, the insured's conduct, negligent as it may have been, as a matter of law was not the kind of conduct which constituted an assault within the meaning of the exclusion clause.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff.

BIELUCH, J., concurring. I concur in the result. In addition, I find further support for this court's conclusion. For the exclusion to be operative, there must be a causal connection between the insured's act of assault or aggression and his death. The policy so provides in the exclusion: "No benefit will be payable under the 'Accidental Death Benefit' provision if the Insured's death *results,* directly or indirectly, or wholly or partially, from: . . . (3) Participation in an assault. . . ." (Emphasis added.) The insured's death was caused by his accident, and not by the claimed criminal assault upon others simultaneously injured in the same incident. The accident, and his death, were not the result of the claimed assault under General Statutes § 53a-61 (a) (3).

DALY, J., dissenting. I disagree. "A person is guilty of assault in the third degree when: . . . (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument." General Statutes § 53a-61 (a).

"Dangerous instrument," as defined in General Statutes § 53a-3 (7), "means any instrument, article or substance which . . . is capable of causing death or serious physical injury, and includes a 'vehicle' as that term is defined in this section."

Unlike the defendant insurance company in *Johnson* v. *Metropolitan Life Ins. Co.*, 26 Conn. Sup. 398, 406, 225 A.2d 498 (1966), the defendant here has sustained its burden of proving the exception, namely, that a serious physical injury had been inflicted on another person by means of a "dangerous instrument" used by the insured.