[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
After the parties waived their jury trial election, these cases, which were consolidated for trial because they arose from the same incident, were tried to the court. There is no question that the plaintiffs, Uriah Norman and David McGregor, sustained serious personal injury as a result of being involved in an accident on August 14, 1995. These cases are concerned with whether there is any liability on the part of the defendants, Thomas Donovan, Sr., Thomas Donovan, Jr. and Kenneth Distasio, to compensate the plaintiffs for those injuries. The plaintiffs have failed to persuade the court, by a fair preponderance of the evidence, that the defendants are liable for the injuries the plaintiffs sustained.
 I. Facts
The court finds the following facts based on the credible evidence:
On August 14, 1995, the plaintiff Uriah Norman ("Norman"), then 14 years old, and the plaintiff David McGregor ("McGregor"), then 13 years old, were involved in a serious accident when, at the intersection of Second Avenue and White Street in West Haven, Connecticut, a motorcycle that Norman was operating and on which McGregor was a passenger went through a stop sign at a high rate of speed and collided with a motor vehicle that had the right of way. Both plaintiffs were thrown from the CT Page 7539 cycle and sustained serious injuries as a result.
Earlier that day, Norman had invited McGregor to go for a ride with him to the beach in West Haven from their home neighborhood in New Haven, Connecticut. Norman was operating an off-road motorcycle ("cycle") which was registered to the plaintiff Thomas Donovan, Sr. and operated off-road by his son, the defendant Thomas Donovan Jr. The cycle had been reported stolen on July 15, 1995. On the day of the accident, the investigating officer observed that the ignition on the cycle was hot wired and it had a partial plate.
Norman got the cycle from another youth in his neighborhood. He had it approximately one to two weeks before the accident. When Norman got the cycle it was not running and he fixed it up. He did not have a key for the cycle and he had to push start it in order to run it. In order to operate the cycle, Norman needed to reach the handlebars, which were at his waist level, so that he could clutch with his left hand and operate the throttle and hand brake with his right hand. He had to lean forward to operate the cycle because the handlebars were too far away from him.[1] When the cycle was at a stop, he had to place both feet on the ground so that the cycle would not tip over.
On August 14, 1995, Norman, who had been to the beach in West Haven one time previously, missed a turn and was operating the cycle on Union Avenue, having turned left onto it from Center Street. As it turned out, the defendant Thomas Donovan, Jr. ("Donovan") lived at 221 Union Avenue and was standing outside his home talking to two friends, the defendant Kenneth Distasio ("Distasio") and a former defendant Richard Cuomo ("Cuomo"), who were both inside Distasio's Suzuki jeep. As the cycle took the turn from Center onto Union, Donovan heard it and then recognized it as the one that had been stolen from his home about a month before. He ran into the street yelling, "That's my bike, that's my bike," and waving his hands. McGregor and Norman did not recall hearing what McGregor was yelling at them.
When he saw Donovan waving at him and yelling, rather than slowing down or stopping Norman became scared and accelerated the cycle. Even though he did not hear what Donovan was yelling, Norman felt something was going to happen to them as soon as he saw Donovan in the street. He felt he was in danger because "it was strange for us to be in West Haven . . . with a bike."[2] Shortly thereafter, Donovan threw a blue recycling bin at the cycle which struck McGregor in the leg, but caused him no injury. Norman continued to accelerate as he proceeded down Union. Donovan returned to the jeep and asked Distasio to follow the cycle, which Distasio did.[3]
As he drove off, an empty trash can became caught under the front end of the jeep. CT Page 7540
Union Avenue is a one-way street which has stop signs at each intersection between Donovan's house and its end at White Street. Norman, who was travelling at a high rate of speed, did not stop at the stop signs located at Main Street, Brown Street or White Street. Distasio stopped at each of those stop signs. At the intersection of Brown and Union, an independent witness observed both the cycle and the jeep. She saw the cycle go through the intersection at a high rate of speed without stopping. When she first observed the cycle, the jeep was between a half block and a block behind it. The jeep came to a full stop at the intersection of Brown and then stopped a second time, as Cuomo got out to remove the trash can. When the jeep resumed proceeding down Union, the witness observed the cycle turning east onto White Street. The cycle did not slow, either when it went through the intersection at Brown or on its way down Union. The cycle took a left at Union and White.
According to McGregor, Norman was operating the cycle at about 40 miles per hour. At one point, the cycle hit a bump in the road on Union and McGregor almost fell off. Although he saw the jeep behind them on Union, the last time McGregor saw the jeep was when they went through the intersection of Brown without stopping. When the cycle took the turn onto White Street, he looked back and could not see the jeep behind them. Once the cycle was proceeding on White Street, McGregor didn't look back again.
On White Street, Norman again failed to stop at the stop signs although McGregor stated he slowed slightly before the stop sign at the intersection of White and Second Avenue.[4] Another independent witness, who was travelling southbound on Second Avenue, with the right of way, brought her vehicle to a full stop at the intersection with White because she heard and then saw the cycle approaching the intersection at a high rate of speed and believed it was not going to stop. She observed the cycle go through the intersection and collide, in the middle of the intersection, with a vehicle travelling northbound on Second Avenue that had the right of way. Norman and McGregor were thrown from the cycle and the cycle actually landed underneath the front end of the witness' stopped southbound vehicle. After checking on her infant daughter, who was in a car seat, the witness backed her vehicle off the cycle. Once she completed that task, she observed the jeep at the scene and saw one of its occupants get out and pick up the cycle by the handlebar. Before the jeep arrived on the scene, two women, one of whom came from a house across the street, had gone to assist the boys in the road.
The closest the jeep was to the cycle at any point was about a half block. Once the cycle turned onto White, the jeep was no longer following it. Distasio and Cuomo testified that they lost sight of the cycle some CT Page 7541 time after the intersection of Union and Brown and they did not see the cycle at Union and White. Their testimony was consistent with McGregor's recollection that he did not see the jeep when Norman took the left from Union onto White.[5]
Assuming that the jeep was heading in the direction of New Haven, Distasio took a left onto White Street and proceeded slowly down it at between 10 and 15 miles per hour, looking into driveways. Shortly before the jeep reached the intersection of Union and Second, they saw a friend of Cuomo's from school and they pulled over to ask him if he had seen two kids on a cycle. At that time, they became aware that the cycle had already been involved in the accident in the intersection. They then proceeded to the intersection, pulled over to the right and got out of the jeep. Distasio went over to the cycle, which was on the roadway and not under a car, and picked it up by the handlebars. Distasio then left the scene and went to Donovan's grandfather's house. Shortly thereafter, Distasio, Donovan and Cuomo drove back to the scene with Donovan's grandfather in his car.
 II. Theories of Liability
The plaintiff's claim that the throwing of the recycling bin and the pursuit of the cycle constituted an assault and they seek to hold both Distasio and Donovan responsible under a theory of concerted action pursuant to 4 Restatement (Second) Torts, § 876 (1992).[6] They also contend that Distasio was negligent in undertaking the pursuit and operated his vehicle at an unreasonable rate of speed and recklessly and, again, they seek to hold Donovan responsible under a theory of concerted action.[7] Finally, they seek to hold Thomas Donovan, Sr. liable under a theory of parental liability.[8]
 II. A. Civil Assault
Relying on § 21 of the Restatement (Second) of Torts, the Appellate Court has defined a "civil assault" as "the intentional causing of imminent apprehension of harmful or offensive contact in another." Dewittv. John Hancock Mutual Life Ins. Co., 5 Conn. App. 590, 594, 501 A.2d 768
(1985). 1 Restatement (Second) Torts, § 21 (1965). In order to be held liable under § 21, "it is necessary that the actor intend to inflict a harmful or offensive bodily contact upon the other or a third person or put him in apprehension of such contact. Unless he acts with such intent, the actor is not liable for an assault. . . ." (Emphasis supplied.) Id., comment f to § 21. Although no actual contact is required, the action must be of "such a nature as to excite an apprehension of a battery. . . ." and that apprehension "must be one which would be normally aroused in the mind of a reasonable person." W. Prosser CT Page 7542 W. Keeton, Torts, § 10, pp. 43-44 (5th ed. 1984). An assault "cannot be accomplished by words alone. There must be an overt act evidencing some corporeal threat." D. Wright, J. FitzGerald W. Ankerman, Connecticut Law of Torts, § 6, p. 8 (3d ed. 1991).
Recognizing that words alone cannot amount to a civil assault, the plaintiffs maintain they were placed in fear of imminent harm when Donovan threw the recycling bin at McGregor and Distasio began to follow them, that they fled because they were in fear and that the collision, which resulted in their injuries, was proximately caused by the defendants' intentional tortious conduct. However, by his own admission, Norman was scared and felt he was in danger when he first saw Donovan out in the street waving and yelling at him. All the witnesses agreed that Norman accelerated the cycle then and began to flee the scene. Thus, neither Donovan's act of throwing the recycling bin nor Distasio's act of following the cycle nor the combination of those acts caused Norman to feel he was in physical danger and react accordingly. It was, unfortunately, Norman's decision to flee, operating recklessly and at a high rate of speed, which was the proximate cause of the collision.
Furthermore, the court concludes, as a matter of fact, that Distasio did not chase the cycle in a hostile manner. The authorities upon which the plaintiffs rely are distinguishable from this case. In Armes v.Campbell, 603 S.W.2d 249, 250-51 (Tex.Civ.App. 1980), there was evidence that the assault victim, who was concerned about the custody of her grandson, was lured out of her home at night on false pretenses, followed and then forced off the road by the assailant who told her, falsely, that she was under arrest for kidnapping, and stated "Don't run. We'll get you," when she started to leave. The assailant then engaged in a high speed chase after her which ended only when the victim's engine exploded. In Vaughn v. Baxter, 488 P.2d 1234, 1236
(Okla. 1971), there was an incident where threats of harm were made in a parking lot following which Baxter engaged in a high speed chase of the victim's car at speeds of 70 to 85 miles per hour. Baxter admitted he was attempting to run down the car "with a view toward beating up one or more of the occupants."
There is simply no such evidence in this case. Although Distasio certainly wanted to help get Donovan's cycle back, there is no indication that he was following the plaintiffs with the intention of beating them up, or causing them other physical harm, in order to do so. Indeed, Distasio testified that he did not intend to run anybody off the road or physically harm anyone, but that he was following the plaintiffs to try to see where they were going with the cycle and then call the police. To paraphrase Distasio's testimony, he wasn't planning on beating up the plaintiffs because he was not going to jail for a bike. The court CT Page 7543 concludes, therefore, that the plaintiffs have failed to prove Distasio liable for civil assault.
Since the court has concluded that Distasio is not liable for a civil assault, Donovan cannot be held liable for civil conspiracy or as an aider and abetter under the terms of 4 Restatement (Second) Torts, § 876 (1992). This section provides that: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. . . ." (Emphasis supplied.) Thus, a prerequisite to § 876 liability is that another person has committed a tort, which the court has concluded is not the case here. As to a claim of civil conspiracy, the evidence is insufficient to establish that Donovan and Distasio acted intentionally and in concert to harm the plaintiffs. See Lamb v. Peck, 183 Conn. 470, 472, 441 A.2d 14 (1981) (concerted action found when one defendant punched victim in mouth and the other defendants blocked his escape, attempted to kick him and knocked him to the ground); Miles v. Perry, 11 Conn. App. 584, 608-09,529 A.2d 199 (1987) (concerted action found when all defendants "organized, called and orchestrated the church meeting, prepared the texts . . . and spoke at the meeting and acted as a unified whole.") The evidence is also insufficient to establish aiding and abetting. Although Donovan may have encouraged Distasio to follow the cycle so he could get it back, he did not ask him to harm the plaintiffs or engage in any tortious conduct. Donovan's words and conduct do not rise to a level upon which liability could be imposed even if Distasio were found to have committed a tort. See Slicer v. Quigley, 180 Conn. 252, 259-61,429 A.2d 855 (1980) (defendant's comments to "get that _____ motorcycle" not substantial assistance or encouragement of other defendant's tortious conduct). (Drag racing cases, such as Carney v. DeWees, 136 Conn. 256,262, 70 A.2d 142 (1949), are distinguishable because in those cases the mutual participation in the race is considered substantial assistance.)
In sum, as to the counts based on assault, the court concludes that the plaintiffs have failed to prove Distasio liable and that without proof of liability on Distasio's part, there is no liability on Donovan's part. Similarly, since any liability of Thomas Donovan, Sr. would be derived from a liability finding on the part of his son, there has been no liability proven as to him.
 II. B. Negligent Pursuit
The plaintiffs' alternate theory of liability is that Distasio negligently pursued the cycle and that the collision between the cycle CT Page 7544 and a third party was within the foreseeable scope of the risk created by Distasio's negligence. The cases upon which the plaintiffs rely simply stand for the proposition that the trier of fact must decide the question of foreseeability as a matter of fact. For example, in Estate of Jonesv. Massey Motors, Inc., 800 P.2d 257. 258 (Okla.Ct.App. 1990), the court concluded that summary judgment should not have been granted because the question of foreseeability was one for the trier of fact when there was evidence that the defendant continued in pursuit of the victim at a high rate of speed after it became obvious that the victim was fleeing from him. In Jaeger v. Petroni, 133 Ariz. 174, 650 P.2d 476, 480
(Ariz.Ct.App. 1982), although the court held that the trial judge should not have given an "intervening-superseding" cause instruction based on the evidence in that case, the court only assumed that the defendant's pursuit of the victim's vehicle was negligent. The court went on to state: "We are not prepared to hold, however, that the evidence established [defendant's] negligence or the foreseeability of [victim's] injuries as a matter of law. . . . there was evidence that the speeds at which the [defendant] followed the [victim's] vehicle were within the legal limits, and that he did not believe that his pursuit was actually causing [the operator's] reckless driving. We therefore find that the question of the foreseeability of [victim's] injuries was for the jury's determination in deciding whether [defendant] was negligent in the first instance." Id., 650 P.2d 480.
The court has already concluded that Norman began to accelerate and operate the cycle recklessly before Distasio began to follow him. There is no evidence that Distasio operated his vehicle recklessly or followed the cycle at a high rate of speed. To the contrary, the court concludes, as a matter of fact, that Distasio operated his vehicle with reasonable care, followed the cycle at a reasonable speed and complied with the requisite traffic laws by stopping at each intersection controlled by a stop sign. See General Statutes § 14-301(c). Merely following another vehicle in this manner is not negligence. See Prough v. Olmstead, 210 App.Div.2d 603,619 N.Y.S.2d 404, 405 (N.Y.App.Div.3d Dept. 1994) ("If the evidence established that the [defendant's] vehicle had followed [the victim's] vehicle at a reasonable speed and otherwise exercised reasonable care . . . none of defendants could be held liable. . . ."). This court is not prepared to conclude that Distasio had a duty to refrain from following the cycle at all, which is the logical conclusion to the plaintiffs' argument that Distasio should have recognized that by following the cycle he created an undue risk of harm to the plaintiffs. Furthermore, the court concludes, as a matter of fact, that Distasio was no longer following the cycle at the time the accident occurred.
Since the court has concluded that Distasio did not breach any duty to the plaintiffs in following them, there is no basis for holding Donovan CT Page 7545 liable under § 876(b) of the Restatement (Second) of Torts. Similarly, there is no basis for holding Thomas Donovan, Sr. liable, as his liability would be premised on a liability finding against his son.
 III. Proximate Cause
Norman's reckless operation of the cycle was both the legal and proximate cause of the injuries that he and McGregor sustained. Under the facts of this case, the court concludes that the manner in which Norman operated the cycle was the actual cause of the injuries he and McGregor sustained, regardless of what Distasio did or did not do in following the cycle. The court has already concluded that neither Donovan's act of throwing the recycling bin nor Distasio's act of following the cycle nor the combination of those acts caused Norman to feel he was in physical danger and react accordingly by accelerating the cycle and operating it recklessly. Even if the court were to conclude that Distasio should not have followed the cycle and was negligent in so doing, his conduct was not the proximate cause of the accident that injured the plaintiffs. The court concludes that Norman's acts and omissions, when he reached the intersection of White Street and Second Avenue, can be considered a superseding cause in this case. "A superseding cause . . . so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury. . . ." (Internal quotation marks omitted; internal citation omitted.) Wagner v. Clark Equipment Co., 243 Conn. 168, 183, 700 A.2d 38
(1997). "A superseding cause may be found from the contributory negligence of the victim . . . if such negligence is greater than the combined negligence of those against whom recovery is sought." Coburn v.Lenox Homes, Inc., 186 Conn. 370, 383, 441 A.2d 620 (1982). That is unquestionably the case here. Although he was no longer being followed by the jeep at the time he reached the intersection where the collision occurred, Norman failed to stop, went through the intersection at a high rate of speed and took no evasive action to avoid the collision. The court concludes that his conduct alone was the proximate cause of the accident.
 IV. Conclusion
For the foregoing reasons, judgment shall enter in favor of the defendants and against the plaintiffs in both cases, No. CV-96-03899982 and No. CV-97-0403677.
LINDA K. LAGER, JUDGE