[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#102)
Before the court is the defendant's motion for summary judgment. For the following reasons, the court denies the defendant's motion.
 I BACKGROUND
The plaintiff, Nicholas Manafort, through his parent and next friend, James A. Manafort, Jr., filed the present action against the defendant, Essex Insurance Company (Essex), on October 3, 2000. The plaintiff alleges Essex refused to provide him with a defense in a prior action,Voisine v. Manafort, Superior Court, judicial district of Hartford at Hartford, Docket No. 571359 (the underlying action). The underlying action arose when the plaintiff, while driving a quarter midget race car, collided with Leroy Voisine during a racing event. Voisine sued the plaintiff to recover for his injuries. The plaintiff claims he was entitled to a defense in the underlying action by Essex through his membership in the Quarter Midgets of America, Inc., in accordance with an insurance policy issued by Essex. The plaintiff alleges he was compelled to retain counsel and incur other expenses in connection with his defense to the underlying action when Essex refused to provide a defense.
Essex filed a motion for summary judgment on December 7, 2000, on the ground that the insurance policy does not cover claims for injuries to one race participant by another. In support of its motion, Essex submits a memorandum of law; a copy of the insurance policy, including a copy of the GK-203 endorsement to the insurance policy which defines "additional insureds," a copy of the GK-204 endorsement to the insurance policy which defines "participant"; copies of the complaint, revised complaint and second amended complaint from the underlying action; and the deposition of Leroy Voisine. The plaintiff filed an objection and supporting memorandum. In support of his objection, the plaintiff submits a copy of the revised complaint from the underlying action, the affidavit of James A. Manafort, Jr., portions of the deposition of Leroy Voisine, and a copy of the relevant insurance policy. Essex filed a reply memorandum and the plaintiff filed a sur-reply. The court heard oral argument on May 21, 2001, and now issues this memorandum of decision.
 II STANDARD OF REVIEW
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a CT Page 9863 motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted.) Miles v. Foley, 253 Conn. 381, 386, 752 A.2d 503
(2000). "A `material' fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699
(1990). "[T]he court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
"The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v. Danbury Hospital, 252 Conn. 193, 201,746 A.2d 730 (2000). "Summary judgment `is appropriate only if a fair and reasonable person could conclude only one way. . . . The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed.'" Morascini v.Commissioner of Public Safety, 236 Conn. 781, 808-09, 236 A.2d 1340
(1996).
 III DISCUSSION
Essex moves for summary judgment on the ground that the "policy under which the plaintiff seeks coverage does not extend coverage with respect to injuries inflicted by race participants on other participants." (Motion for Summary Judgment, p. 1.) Essex contends in its Motion that the complaint in the underlying action alleges that both the plaintiff and Voisine were participants" and, therefore, the claim was not covered by the policy. The plaintiff argues there is a question of fact as to whether Voisine was a "participant" in the race.
"Under Connecticut law, an insurer's duty to defend is broader than its duty to indemnify." Stamford Wallpaper Co. v. TIG Insurance, 138 F.3d 75
79 (2nd Cir. 1998). "[I]f an allegation of the complaint falls even CT Page 9864 possibly within the coverage, then the insurance company must defend the insured. . . . On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." (Citation omitted; internal quotation marks omitted.) Community ActionFor Greater Middlesex County, Inc. v. American Alliance Insurance Co.,254 Conn. 387, 399, 757 A.2d 1074 (2000). "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage." (Internal quotation marks omitted.) Id., 398. "The existence of a duty to defend is determined on the basis of what is found within the four corners of the complaint. . . . Although the duty to defend is broad, however, it is circumscribed by the language of the insurance contract. The nature of the insurer's duty to defend is purely contractual. There is no common law duty as to which the courts are free to devise rules." (Internal quotation marks and citation omitted.) Stamford Wallpaper Co.v. TIG Insurance, supra, 79.
Nevertheless, if the person named as a defendant in the underlying action is not actually an insured, there is no duty to defend, no matter what is alleged in the complaint in that action. An insurer is "under no contract duty to provide a defense for an uninsured stranger to the contract . . . simply because a third party had alleged facts which, if true, would have given [the defendant] the status of an insured." Keithanv. Massachusetts Bonding Insurance Co., 159 Conn. 128, 142, 267 A.2d 660
(1970).
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Tallmadge Bros., Inc. v. Iroquois GasTransmission System, L.P., 252 Conn. 479, 495, 746 A.2d 1277 (2000). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Citations omitted; internal quotation marks omitted.) ImperialCT Page 9865Casualty Indemnity Co. v. State, 246 Conn. 313, 324-25, 714 A.2d 1230
(1998).
"Contract language is unambiguous when it has a `definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion.'" Levine v. Advest, Inc., 244 Conn. 732, 746,714 A.2d 649 (1998). "The rules of construction are applied only if the language of the contract is ambiguous, uncertain or susceptible of more than one construction." Id. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) Tallmadge Bros., Inc.v. Iroquois Gas Transmission System, L.P., supra, 252 Conn. 498.
In the present case, the GK-203 endorsement provides coverage for additional insureds to "[a]ny Participant . . . only with respect to Bodily Injury or Property Damage to Persons other than any other Participant, Automobile Owner, Automobile Sponsor, or Employee. . . ." The GK-204 endorsement defines the word "participant" under the policy as meaning "drivers, mechanics, pitpersons, actual officials of the race, announcers, ambulance crews, tow truck or push car crews, newspersons, photographers, pitgate workers, motorsports event promoters, and all other persons bearing duly and officially assigned pit passes, subject to the following limitations: 1. All such persons must: a. Have clearly defined duties directly allotted to them as respects the staging of the racing program; or b. Be your guest, to whom you have issued a "Guest Pit Pass" and to whom no admission charge of any kind has been charged. 2. In no case, however, will any member of the general public, or any person otherwise classified as a Spectator be considered a Participant by the terms of this policy."
The language of the policy clearly states, and the parties do not dispute, that the policy does not extend coverage to claims made for an injury to one participant by another. Nor do the parties dispute that the plaintiff was a participant in the race in which Voisine was injured. The only issues to be determined on the present motion for summary judgment are whether Voisine was also a "participant," or was an "automobile owner," as defined in the policy, at the time he was injured. Essex argues Voisine was a "participant" and an "automobile owner" and, therefore, the claim in the underlying complaint is not covered by GK-203.
Essex submits the complaints from the underlying action to demonstrate that Voisine was a "participant" at the time of his injury. The revised complaint, the final operative complaint in which Nicholas Manafort was CT Page 9866 named as a defendant in the underlying action, alleged that Voisine as a Race Director and Handler" was a "participant" in the race. (See Exhibit C to Essex's Memorandum, third count, ¶ 2.) The revised amended complaint further alleged that Voisine was acting as a handler in his actions leading up to his injury. (See Exhibit C to Essex's Memorandum, third count, ¶¶ 5, 6.) That the complaint in the underlying action characterized Voisine's position as being a participant is not, however, dispositive of the court's determination; the court must look to the facts alleged in the underlying complaint. See, e.g., Community ActionFor Greater Middlesex County, Inc. v. American Alliance Insurance Co.,
supra, 254 Conn. 402-403 (reviewing factual allegations of the underlying complaint; not relying merely on the characterization of the alleged conduct in the underlying complaint). See also Springdale Donuts, Inc.v. Aetna Casualty Surety Co., 247 Conn. 801, 807, 724 A.2d 1117 (1999) ("The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage.") (Emphasis added.)
The position of "handler" is not specifically listed in the GK-204 endorsement as fitting within the definition of "participant." The endorsement does list various positions within the racing operation which fall within the definition of "participant." Essex contends that "a Handler is the very epitome of a pitperson as well as a mechanic and the `push crew'"; (Essex's Memorandum, p. 12); terms which are listed in the endorsement. However, in his deposition, Voisine does not use those terms to describe his duties at the race. He does explain his activities as a handier as requiring him to help start his son's car and perform pre-race adjustments to the car. (See Deposition of Voisine, Exhibit B to Essex's Memorandum, pp. 50-53, 64-65, 152-53.)[1] He further explained that every car which stops needs a push to begin moving again. (See Voisine Deposition, p. 73.)
According to the revised complaint, he had just re-started his son's car when he was struck. (See Exhibit C to Essex's Memorandum, third count, ¶¶ 5, 6.) Whether that activity fit within the terms listed in the endorsement is not clear. As stated above, in the GK-204 endorsement, the term participant" includes "mechanics," "pit persons," and "push car crews." However, none of these terms is defined. In ascertaining the natural and ordinary meaning of terms utilized in an insurance policy where no definition is provided, our Supreme Court has looked to the dictionary definition, as found in Webster's Third New International Dictionary (Webster's). See Metropolitan Life Ins. Co. v.Aetna Casualty Surety Co., 255 Conn. 295, 306, 765 A.2d 891 (2001);Moore v. Continental Casualty Co., 252 Conn. 405, 410-411, 746 A.2d 1252
(2000). CT Page 9867
Webster's defines "mechanic," in the most closely analogous context, as meaning "a man skilled in the construction or operation of machines or vehicles run by machines." It appears that Voisine was not acting in the capacity of a mechanic when he picked up, pushed, and dropped his son's car to re-start it (see Voisine Deposition, pp. 76-77, 147-149), since a mechanic's skills were not required for the task.
In the closest context, Webster's defines a "pit" as "an area alongside an auto speedway used for refueling or repairing the cars." This definition does not appear to be completely applicable to the type of vehicles which were being raced here, since, in contrast with a stock car, for example, the cars used here could not be started by a child driver alone. (See Voisine Deposition, p. 153.)
In addition to looking to dictionary definitions to ascertain meaning our appellate courts have recognized that the meaning of a word may vary depending on the context of its usage. "As Justice Holmes wrote, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' Towne v. Eisner,245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372 (1918)." Dewitt v. JohnHancock Mutual Life Insurance Co., 5 Conn. App. 590, 594, 501 A.2d 768
(1985). By its definition, a word may imply "an allowance for some degree of difference depending on the "thing' involved. It [may] suggest . . ., as well, a sense of compatibility with the context of its referent as that may be. Its flavor of relativity, depending on the circumstances of its usage, implies some leeway within permissible limits." BuildersService Corp. v. Planning and Zoning Commission, 208 Conn. 267, 277,545 A.2d 530 (1988). In addition, evidence of trade usage may be material to the parties' intention concerning the meaning of a term if "the parties knew or ought to have known of a business usage corresponding to a particular provision inserted in their contract." Stern Co. v.International Harvester Co., 148 Conn. 527, 535, 172 A.2d 614 (1961). Determination of the meaning of a term in an insurance policy "requires careful consideration of the situation [of the parties] to that policy and the circumstances connected with the transaction." (Internal quotation marks omitted.) Ceci v. National Indemnity Co., 225 Conn. 165,168-169, 622 A.2d 545 (1993).
Thus, in this context, that of quarter midget car racing, it is unclear whether a "pit person" means, in addition to one who refuels or repairs a car, one who starts or re-starts it. The question as to whether a person who performed the function which was performed by Voisine just before he was injured constituted a "pit person" presents a material issue of fact for resolution by the trier of fact. CT Page 9868
Likewise it is not clear whether Voisine's function comes within the definition of "push car crews." Webster's provides the following definitions for a push car, neither of which apply in this context: "a railway work car for transporting materials that is usu[ally] towed behind a motorcar" and "an intermediate car connecting a locomotive and a train to be pushed on to a ferryboat." In the endorsement, the term "push car crews" appears after the words "tow truck" ("tow truck or push car crews"). It may be, as the plaintiff contends (plaintiff's memorandum of law in support of objection to motion for summary judgment. p. 9), that a push car crew performs the same function as that of a tow truck, towing disabled vehicles from the racetrack, but the record does not make that clear. As our Supreme Court has noted, courts should be reluctant to find that a term in an insurance contract is meaningless. See PeerlessInsurance Co. v. Gonzalez, 241 Conn. 476, 485, 697 A.2d 680 (1997). At this juncture it is unclear what the meaning of "push car crews" is.
Furthermore, Voisine describes his duties as a handler to be informal and unwritten. (See Voisine Deposition, pp. 152-53.) In addition, the plaintiff submitted the affidavit of James Manafort, Jr. stating that a handler acts in an unofficial capacity, may be merely a guardian for the minor racer, and has no specific or clearly defined duties. (See Affidavit of James Manafort, Jr., dated March 9, 2001, ¶¶ 7, 9, 10.)
As noted, the revised complaint in the underlying action (later replaced by the second amended complaint, in which Nicholas Manafort was no longer a defendant) alleged Voisine was also a race director. (See Exhibit C to Essex's Memorandum, third count, ¶¶ 1, 2.) Voisine addressed his position of race director in his deposition, stating that he held the position for the entire year during which he was injured. (See Voisine Deposition, pp. 36, 55.) It appears that race director would fit within the term "actual official of the race," as listed in the GK-204 endorsement. However, Voisine also stated that he was not acting as race director during the race in which he was injured. (See Voisine Deposition, pp. 36, 55.) Neither party's presentation appears to rely on this part of the endorsement.
Finally, in its reply to objection to motion for summary judgment (#106), p. 6, Essex argues that since Voisine was an automobile owner, there was no coverage for the plaintiff. Essex contends that the GK-203 endorsement does not provide coverage for the plaintiff, as a participant, in this situation, since coverage was provided to "Any Participant" as an additional insured with respect to bodily injury to persons other than an "Automobile Owner." However, the reference to Voisine's deposition testimony cited by Essex for this proposition does not confirm that he was, in fact, an automobile owner at the time of the CT Page 9869 race in question. Instead, it states that Voisine bought a quarter midget car when his son Josh got involved with such racing. (See Voisine Deposition, p. 32.) According to the revised complaint, third count, paragraph 5, his son Jeremy was operating a car when Voisine was injured. Thus, the record does not make clear that Voisine was an automobile owner at the time of the incident.
On a motion for summary judgment the burden is on the movant to make a sufficient showing of an absence of any genuine issue of material facts. See Miles v. Foley, supra, 253 Conn. 386. In the present case, it is unclear whether a person performing the function which Voisine performed just before he was injured is considered a "participant" under the insurance policy. It is also not clear whether Voisine was an "automobile owner" at the time he was injured. Accordingly, the court cannot find as a matter of law that Voisine was a "participant" or an automobile owner" within the meaning of the insurance policy. Therefore, Essex's motion for summary judgment is hereby denied.
 IV CONCLUSION
Essex's motion for summary judgment is denied because there exist questions of material fact as to whether Voisine was a "participant" or an "automobile owner" within the meaning of the insurance policy. It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT